1997-NMCA-081

944 P.2d 276

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Armando ARREDONDO, Defendant–
Appellant.**

No. 16391.

Court of Appeals of New Mexico.

July 15, 1997.

Tom Udall, Attorney General, Joan M. Waters, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## *OPINION*

ARMIJO, Judge.

1. This appeal stems from a plea by Defendant to the charges of possession of cocaine, a fourth degree felony, and possession of marijuana, a petty misdemeanor. Defendant reserved the right to challenge, on appeal, the trial court's denial of his motion to suppress certain drugs found in his vehicle. Defendant asks us to review the reasonableness of the search of his vehicle. Specifically, we are asked to decide the extent to which the police may search the automobile of a defendant who is the subject of a valid investigatory stop based on a reasonable suspicion that he recently used a gun to commit an assault. We affirm the decision of the trial court with respect to the reasonableness of the initial search of the front seat and floor area of Defendant's vehicle and the seizure of marijuana and drug paraphernalia found as a result of that search. However, we reverse the ruling of the trial court which denied suppression of other drugs found as a result of the expanded warrantless search of Defendant's vehicle for drug evidence.

## I. FACTUAL BACKGROUND

2.  Some moments before Defendant was stopped by Officer Carl Link of the Dona Ana County Sheriff's Office, a victim reported that he had been assaulted by a man with a handgun. The assailant reportedly escaped with two other persons in a maroon-colored Monte Carlo. The record discloses that at approximately 3:25 a.m. on November 6, 1994, Officer Link arrived at a Pic Quik store near Las Cruces, New Mexico, to investigate the assault. Although the victim of the assault described himself as an alcoholic and smelled of alcohol, he was able to respond to the officer's questions and his story "made sense." The victim described the suspect's vehicle as a "maroon" colored Monte Carlo with custom wheels and a license plate with the letter "J" in it. The victim told Officer Link that there were three persons in the vehicle, and that one of them had pointed a .45 caliber handgun at him. The victim sometimes referred to one of the suspects as "Eloy De La O," but indicated he was not sure of the suspects' identity and could not identify the other two suspects.

3.  This information was conveyed to other law enforcement personnel patrolling in the area. About fifteen minutes later, units of the Las Cruces Police Department spotted a Monte Carlo matching the victim's general description and reported this information by radio to Officer Link. While traveling toward the area where the vehicle had been sighted, Officer Link observed a "brown" Monte Carlo speeding in the opposite direction. Defendant was the driver of this vehicle. Noting that Defendant gave him a "funny look" as they passed one another, the officer turned around to follow the Monte Carlo. The Monte Carlo matched the victim's general description and its license plate contained the letter "J". Officer Link testified that, at night, the colors "brown" and "maroon" are sometimes confused, and he believed that the vehicle he spotted was the one used in the assault incident.

4.  While driving the Monte Carlo, Defendant tried to evade the officer by making a series of left and right turns in quick succession. After following Defendant's vehicle through several of these turns, Officer Link drew closer and turned on his emergency lights. Despite the engaged emergency lights, Defendant continued to travel for another one or two blocks in the Monte Carlo, then turned into the parking lot of a Circle K store, exited the Monte Carlo and walked toward the store's entrance.

5.  Officer Link pulled into the parking lot behind Defendant's vehicle. He asked Defendant to return to the Monte Carlo, and Defendant complied. After Defendant sat back down in the driver's seat of the Monte Carlo, Officer Link approached the Monte Carlo, observed that Defendant was the sole occupant, and requested Defendant's license and proof of insurance. Defendant stated that he had no insurance, his license was suspended, and he was wanted on warrants. Upon hearing this reply and observing Defendant's nervous demeanor, Officer Link returned to his vehicle to wait for backup. While waiting, the officer called in to confirm that Defendant's driver's license had been suspended and to check for warrants. He later found that Defendant's license was in fact suspended, but there were no other active warrants for Defendant in Las Cruces.

6.  After backup arrived, Officer Link reapproached the Monte Carlo and asked Defendant to exit the vehicle. Officer Link then frisked Defendant's person. The frisk revealed a pager, but no weapons or contraband. After the frisk, Officer Link asked Defendant to move to an area between the Monte Carlo and Officer Link's vehicle. Defendant complied. Officer Link then searched the passenger compartment of Defendant's vehicle for a weapon. Based on his own experience of storing his gun, when off-duty, in the split between the front seats of an automobile, Officer Link first checked the area between the front seats of Defendant's vehicle. While doing this, he observed a package of rolling papers. Next, Officer Link searched the floor near the driver's seat, where he found "plastic baggie type items." Finally, Officer Link went to the other side of the vehicle, opened the door, and leaned into the vehicle to search the floor near the passenger seat. In the middle of the floor on the passenger side, Officer Link saw a "small roach" containing marijuana.

7. After finding the marijuana roach, Officer Link briefly spoke with Defendant and then returned to the Monte Carlo to scan the dashboard with his flashlight. While looking into a small hole about the size of a cigarette lighter that appeared to have been cut out from the dashboard, he saw a plastic baggie containing a white, powdery substance. Officer Link retrieved the baggie. The white powdery substance in the baggie was later determined to be cocaine.

8. No weapon was located in the vehicle.

## II. DISCUSSION

### A. Standard of Review

■ 9. In reviewing a trial court's denial of a motion to suppress, an appellate court will affirm the trial court's factual findings if they are supported by substantial evidence, viewing the evidence in the light most favorable to the State. *State v. Vargas*, 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct. App.), *cert. denied*, 120 N.M. 213, 900 P.2d 962 (1995); *State v. Blakely*, 115 N.M. 466, 468, 853 P.2d 168, 170 (Ct.App.1993). However, we afford a de novo review of the trial court's application of law to the facts. *State v. Flores*, 122 N.M. 84, 87, 920 P.2d 1038, 1041 (Ct.App.1996). Whether a search and seizure is reasonable under Article II, Section 10 of the New Mexico Constitution or the Fourth Amendment of the United States Constitution is a mixed question of law and fact. *Id.* De novo review of such questions is necessary to meaningfully discharge our "duty ... to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context...." *State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994).

### B. Preservation of Error

10. Defendant concedes the validity of the initial investigatory stop and did not challenge the validity of the frisk of his person in his motion to suppress or during the suppression hearing. Hence, we start from the assumption that the encounter which led to the seizure of illegal drugs from Defendant's vehicle began as a valid investigatory stop followed by a valid frisk of Defendant's person. The issues on appeal are: (1) whether it was reasonable for the law enforcement officer to extend the scope of his protective search for weapons from Defendant's person to the front seats and adjacent floor area of Defendant's vehicle, and, if so, (2) whether it was reasonable for the law enforcement officer to extend the scope of this protective search of Defendant's vehicle for weapons to the small hole in the dashboard of Defendant's vehicle where the cocaine was found.

11. In resolving these issues, we determine that this case is controlled by the New Mexico Supreme Court's recent decision in *State v. Gomez*, 122 N.M. 777, 932 P.2d 1 (1997).

### C. Search of Defendant's Vehicle for Weapons

12. Defendant argues that the search of his vehicle leading to the discovery of the marijuana roach was unreasonable because there was no reason to suspect that Defendant was armed and dangerous after he exited his vehicle and was frisked. We disagree and hold that: (1) the officer's suspicion that Defendant was involved in an aggravated assault was reasonable and had not been dispelled at the time of the initial search of Defendant's vehicle for weapons; and (2) it was reasonable for the officer to search the front seats and adjacent floor area of Defendant's vehicle to check for weapons because there were exigent circumstances to justify this limited search for weapons during the investigatory stop.

■ 13. Reasonable suspicion to allow an officer to make an investigatory stop exists if the officer is " 'aware of specific articulable facts, together with rational inferences from those facts,' and these facts and inferences ... provide the basis for the suspicion." *State v. Galvan*, 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App.1977) (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975)). Defendant does not dispute the reasonableness of Officer Link's initial suspicion that Defendant or Defendant's vehicle recently had been involved in an aggravated assault. Rather, Defendant asserts that the following intervening acts by Officer Link had the

effect of dispelling these suspicions and removing any exigent circumstances that would have justified the search of Defendant's vehicle: (1) ordering Defendant to return to his car; (2) approaching the car to obtain information about Defendant's license and insurance; (3) recognizing that Defendant's name was not that of the person tentatively identified as a suspect by the victim of the assault; (4) recognizing that the color of Defendant's vehicle was brown, not maroon; (5) recognizing that the vehicle contained only one occupant, not the three occupants described by the assault victim; and (6) frisking Defendant's person and finding no weapons as a result of the frisk. Defendant asserts that after these events occurred, the officer had no reason to believe that Defendant was the same person who was involved in the aggravated assault. Hence, Defendant asserts there were no exigent circumstances to support a protective search of Defendant's vehicle for weapons at that time.

14. We disagree. Viewing the facts in the light most favorable to the State, we see the events which transpired during Officer Link's initial investigation as confirming, rather than dispelling, the suspicions which led to the stop and search of Defendant's vehicle for weapons. There were specific, articulable facts supporting the officer's continued belief that the suspect was involved in the assault, namely: (1) Defendant's vehicle matched the victim's general description of the vehicle used in the aggravated assault; (2) the officer believed that the intoxicated victim could have confused the color "maroon" with "brown"; (3) the events occurred late at night in darkness; (4) Defendant tried to evade the officer prior to the stop; (5) Defendant responded to the officer's request for license and insurance information by stating that his license was suspended, he had no insurance, and he was wanted on warrants. We hold that this evidence provides specific, articulable facts which are sufficient to show that, at the time of the search of the vehicle's front seats and floor area, the officer performing the search had a reasonable suspicion that Defendant was involved in the assault.

15. Next, we address the question of whether there were exigent circumstances to justify the initial protective search of Defendant's vehicle for weapons during the investigatory stop. Our New Mexico Supreme Court recently announced that, under Article II, Section 10 of our state constitution, "a warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances." *Gomez*, 122 N.M. at 789, 932 P.2d at 12. The requirement of exigent circumstances announced in *Gomez* accords with this Court's past decisions regarding the validity of limited searches or "frisks" based on reasonable suspicion. Recognizing that such stop-and-frisk situations may "prevent imminent danger to life or serious damage to property, or ... forestall the imminent escape of a suspect or destruction of evidence[,]" *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App. 1986), we have held that "[l]aw enforcement officers carrying out an investigatory stop are permitted to make a limited search for weapons that might be used to harm them." *State v. Lovato*, 112 N.M. 517, 524, 817 P.2d 251, 258 (Ct.App.1991) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A limited search for weapons is permitted during an investigatory stop when an officer has reason to believe that a suspect may be armed and dangerous. *Flores*, 122 N.M. at 90, 920 P.2d at 1044.

16. An officer's reasonable belief that a suspect is armed and dangerous may follow from a reasonable suspicion that the suspect has committed, is committing, or will commit an "inherently dangerous crime." *State v. Cobbs*, 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App.1985). Aggravated assault, or "assault with weapons," is one of the inherently dangerous crimes which provide a police officer with reason to conduct a protective search. *Id.* Thus, the officer in this case was justified in conducting a protective search based on the reasonable suspicion that Defendant had recently used a handgun to commit an aggravated assault.

17. The question remains whether the scope of such a protective search for weapons lawfully may extend from a suspect's person to a suspect's vehicle. This

Court previously upheld the validity of a limited vehicle search conducted after suspects exited the vehicle in *Lovato*, 112 N.M. at 524, 817 P.2d at 258. *Lovato*, citing *Terry*, held that "[l]aw enforcement officers carrying out an investigatory stop are permitted to make a limited search for weapons that might be used to harm them." *Id.* The officers in that case were still confronted with a potential danger when they opened the car door and discovered a shotgun because they thought another drive-by shooting suspect was hiding on the floor of the vehicle. The Court distinguished *State v. Landry*, 393 So.2d 713 (La.1981), because in that case the threat of harm was neutralized before the search and because the search was for evidence rather than weapons. We believe that a limited vehicle search for weapons when an officer reasonably believes he may be in danger comports with Article II, Section 10 of the New Mexico Constitution provided that it is based upon a "particularized showing of exigent circumstances," *Gomez*, 122 N.M. at 789, 932 P.2d at 12, rather than "purely on the *theoretical* basis that harm could occur after the investigation is terminated and the suspect is permitted to reenter his vehicle." *People v. Torres*, 74 N.Y.2d 224, 544 N.Y.S.2d 796, 800 n. 4, 543 N.E.2d 61, 65 n. 4 (1989) (citation omitted).

18. Defendant in this case was under investigation for aggravated assault with a handgun, and he had attempted to evade the investigating officer both in his vehicle and on foot prior to the search. Under these circumstances, the officer's belief that the vehicle could contain a weapon was reasonable. We are reluctant to indulge in unrealistic second-guessing of a police officer's judgment in a swiftly developing situation. *See United States v. Sharpe*, 470 U.S. 675, 686–87, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605 (1985). "[I]t is not our function to uncharitably second-guess an officer's judgment." *State v. Bates*, 304 Or. 519, 747 P.2d 991, 994 (1987); *see also Torres*, 544 N.Y.S.2d at 801–02, 543 N.E.2d at 66 (Bellacosa, J. dissenting) ("The dangers may be 'far-fetched' to Judges in the protected enclave of the courthouse, but not to cops on the beat." (citation omitted)).

19. We find that the initial search of Defendant's vehicle, resulting in the discovery of the marijuana on the floor, was reasonable because this search was based upon specific, articulable facts indicating that Defendant was dangerous and might attempt to gain quick access to a weapon in his vehicle, and because the search was limited to portions of the front seats and adjacent floor area where a weapon might be placed and quickly retrieved. We find that under these circumstances, the State has made a particularized showing of exigent circumstances. The officer in this case had a reasonable belief that Defendant was armed and dangerous and might attempt to gain quick access to a weapon located on the front seat or adjacent floor area of his vehicle.

D. *Seizure of Marijuana and Drug Paraphernalia*

20. We hold that the discovery and seizure of the marijuana roach on the floor below the front passenger seat in Defendant's vehicle falls under the plain view exception to the warrant requirement. In order to properly invoke this exception, the officer must be lawfully in the position from which he or she observed the marijuana roach, its discovery must be inadvertent, and its incriminating nature must be immediately apparent such that the officer had probable cause to believe the marijuana roach was evidence of criminal activity. *See State v. Luna*, 93 N.M. 773, 779, 606 P.2d 183, 189 (1980); *State v. Lara*, 110 N.M. 507, 797 P.2d 296 (Ct.App.1990). Although the United States Supreme Court has abandoned the requirement of inadvertent discovery as unnecessary to prevent pretextual searches, *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), New Mexico courts have retained this requirement. *Lara*, 110 N.M. at 514, 797 P.2d at 303; *cf. State v. Meyer*, 78 Hawai'i 308, 893 P.2d 159, 165 n. 6 (1995) (retaining requirement of inadvertent discovery under Hawaii Constitution).

21. The discovery of marijuana in Defendant's vehicle meets all of the requirements of the plain view doctrine. The officer was lawfully in the position to view the floor

of Defendant's vehicle because he was conducting a valid, protective search of areas of the vehicle where Defendant might gain quick access to a weapon. The incriminating nature of the marijuana roach was immediately apparent and gave the officer probable cause to believe that there was evidence of criminal activity. Finally, the discovery of the roach was inadvertent, since the purpose of the search of the floor of Defendant's vehicle was to check for the presence of weapons, not drugs. We affirm the trial court's ruling that the discovery and seizure of the marijuana and drug paraphernalia on the floor of Defendant's vehicle was reasonable.

### E.   Search Leading to Discovery and Seizure of Cocaine

■■■■■■■   22.   Our holding that it was reasonable for Officer Link to conduct a protective search of the front seats and adjacent floor area of Defendant's vehicle does not extend to the officer's further search of the vehicle and intrusion into the small hole in the vehicle's dashboard. Because the purpose of the officer's protective search for weapons is to ensure safety rather than to find evidence of crime, the scope of this search is limited to those areas of the suspect's vehicle in which a weapon may be placed and quickly retrieved. *See Flores,* 122 N.M. at 90, 920 P.2d at 1044 (scope of search for weapons during investigatory stop is limited to its protective purpose); *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983) (same). As of the time that the marijuana roach was discovered, Officer Link had completed his protective search for weapons that might be immediately accessible to Defendant, and he found no such weapons. After Officer Link found the marijuana roach on the floor of the vehicle, he stepped out of the vehicle to speak with Defendant and then reentered the vehicle again in order to conduct a search of the vehicle for drugs. He testified that once he found the marijuana inside the vehicle, he "continued the investigation based on what [he] believed to be narcotics at that point." The officer stated:

> I started suspecting that there was more than just a very small roach clip lying on the floorboard. I returned back to the driver's side. When I was scanning the dashboard with my flashlight, there was a small cut-out hole approximately one inch or so. It looked like a cigarette lighter had used to be there or something like that. When I shined my flashlight in there, I saw a plastic baggie that appeared to have a powdery substance in it.

23.   This testimony indicates that after the discovery of the marijuana on the floor, Officer Link's continued search was not for the purpose of locating a weapon, but for the purpose of finding more drug evidence. We hold that the expansion of that search to include the small area within the dashboard of Defendant's vehicle exceeded the scope of the initial, protective search for weapons and requires additional justification. Such additional justification must meet the standard recently articulated by our Supreme Court in *Gomez,* 122 N.M. at 789, 932 P.2d at 12. The State did not meet this standard because it failed to make a particularized showing of exigent circumstances to support the expanded warrantless search for drug evidence in the small hole in the dashboard of Defendant's vehicle.

24.   Since we hold that the search for drug evidence in the small hole in the dashboard of Defendant's vehicle exceeded the scope of a protective search for weapons, a finding of exigent circumstances to justify this expanded search for drug evidence cannot rely upon the same safety concerns which motivated the initial search for weapons during the investigatory stop. The exigency which prompted the search for weapons ceased to exist after the officer searched the front seats and floor area of Defendant's vehicle and found no weapons.

25.   The expanded search for drug evidence in Defendant's vehicle also cannot rely upon the presumption of exigency for a warrantless arrest that arises when an officer observes the person arrested committing a crime. That presumption may apply to Defendant's arrest for committing the misdemeanor of possessing a small quantity of marijuana, but it does not apply to the subsequent search of the hole in the dashboard of

his vehicle for cocaine. *See Luna,* 93 N.M. at 777–78, 606 P.2d at 187–88 (exigent circumstances for search of vehicle not present after driver was arrested for misdemeanor committed in officer's presence); *cf. Campos v. State,* 117 N.M. 155, 159, 870 P.2d 117, 121 (1994) (exigency for warrantless arrest presumed where officer observes person arrested committing felony).

26. As observed in *Gomez,* 122 N.M. at 789, 932 P.2d at 12, the type of exigent circumstance required to justify the expanded search for drug evidence in Defendant's vehicle is an urgent need "to avoid removal or destruction of evidence of illegal activity which [the officer] had probable cause to believe was inside the car." Unlike the situation in *Gomez,* however, there was no particularized showing that evidence would be destroyed or removed without an immediate warrantless search of Defendant's vehicle for drugs.

### F. *Search Incident to Arrest*

27. We also hold that the expanded warrantless search for drug evidence in the small hole in the dashboard of Defendant's vehicle exceeded the scope of a search incident to Defendant's lawful arrest. A search incident to a lawful arrest may fall under an exception to the warrant requirement in the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution if the State meets its burden of proving that the search occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control. *See State v. Martinez,* 1997 NMCA 048, ¶ 6, 940 P.2d 1200 (Ct.App. 1997); *State v. Boswell,* 110 N.M. 190, 192, 793 P.2d 1343, 1345 (Ct.App.1989), *rev'd on other grounds,* 111 N.M. 240, 804 P.2d 1059 (1991). These requirements stem from the fact that "[t]he search incident to arrest exception to the warrant requirement arose out of the possible danger that a person arrested might be concealing a weapon, or that evidence of the crime might be destroyed or concealed." *Boswell,* 110 N.M. at 192, 793 P.2d at 1345; *see also State v. Capps,* 97 N.M. 453, 454, 641 P.2d 484, 485 (1982) ("The

common element running through [the] exceptions [for automobile search and search incident to arrest] is exigency.").

28. The United States Supreme Court has established a bright-line rule that the Fourth Amendment to the United States Constitution permits law enforcement officers to search the passenger compartment of an automobile when they have made a lawful custodial arrest of an occupant of that automobile. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). In *Gomez* our Supreme Court stated "we do not accept the federal bright-line automobile exception." 122 N.M. at 789, 932 P.2d at 13. Rather, our supreme court embraced a more recent pronouncement of the Supreme Court in which they " 'eschewed bright-line rules [and] instead emphasiz[ed] the fact-specific nature of the reasonableness inquiry....' " *Id.* (quoting *Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)). We believe that Article II, Section 10 of the New Mexico Constitution requires such a fact-specific inquiry under the particular facts of this case.

29. Under the specific facts of this case, we conclude that it was not reasonable to believe that Defendant might be concealing a weapon in an area of his vehicle within his immediate control after Officer Link had addressed this danger by conducting a protective search of the vehicle for weapons. In addition, the State made no showing of an imminent danger that additional drug evidence in Defendant's vehicle might be destroyed or concealed after this protective search for weapons was completed and Defendant was detained outside the vehicle. Under these circumstances, nothing indicated that the area inside the small hole in the dashboard of Defendant's vehicle fell within Defendant's immediate control. *Cf. Martinez,* 1997 NMCA 048, ¶ 12, 940 P.2d at 1203 (finding that search of paper sack not justified as search incident to arrest where nothing indicated sack was within area where Defendant "might gain possession of a weapon or destructible evidence"). Hence, we conclude that the expanded warrantless search of the small hole in the dashboard of Defendant's vehicle exceeded the scope of

the search incident to arrest exception to the warrant requirement in Article II, Section 10 of the New Mexico Constitution.

### G. *Inevitable Discovery During Inventory Search*

30. As an alternative basis on which to allow the seizure of the cocaine found in the small hole in the dashboard of Defendants' vehicle, the State asserts on appeal that this seizure falls under the "inevitable discovery" exception to the "fruit of the poisonous tree" doctrine because the cocaine would have been found during an inventory search following Defendant's arrest for possession of the marijuana and drug paraphernalia found on the vehicle's floor. Under the "inevitable discovery" exception, the State admits the cocaine was seized unlawfully but maintains that this evidence would have been seized independently and lawfully in due course. *See State v. Corneau*, 109 N.M. 81, 90, 781 P.2d 1159, 1168 (Ct.App.1989). In this case, the State asserts that the exception to the warrant requirement for inventory searches provides such an independent and lawful method of seizing the cocaine.

 31. Our past decisions have upheld the constitutionality of an inventory search if: " '1) the vehicle to be inventoried is in police control or custody; 2) the inventory is made pursuant to established police regulations; and 3) the search is reasonable.' " *State v. Ramzy*, 116 N.M. 748, 750, 867 P.2d 418, 420 (Ct.App.1993) (quoting *State v. Williams*, 97 N.M. 634, 636, 642 P.2d 1093, 1095 (1982)). "Like all warrantless searches, however, inventory searches are presumed to be unreasonable and the burden of establishing their validity is on the State." *State v. Shaw*, 115 N.M. 174, 176, 848 P.2d 1101, 1103 (Ct.App.1993).

32. In this case, the State pointed to no evidence in the record to establish that an inventory search of Defendant's vehicle was made pursuant to established police regulations following Defendant's arrest for a small quantity of marijuana and drug paraphernalia. For these reasons, we hold that the State did not meet its burden of proving that the seizure of cocaine was justified as the inevitable result of an inventory search.

### III.  CONCLUSION

33. The trial court's decision is affirmed with respect to the seizure of the marijuana and drug paraphernalia found on the floor of Defendant's vehicle. With respect to the seizure of the cocaine found within the hole in the dashboard of Defendant's vehicle, we reverse and remand for entry of an amended order suppressing other drugs found in Defendant's vehicle following the expanded warrantless search of the vehicle for drug evidence.

34. **IT IS SO ORDERED.**

DONNELLY and APODACA, JJ., concur.