2004-NMCA-081

94 P.3d 18

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Demetrio Daniel GUTIERREZ,**
**Defendant–Appellant.**

**No. 23,047.**

Court of Appeals of New Mexico.

May 7, 2004.

Certiorari Denied, No. 28,710,
June 30, 2004.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} Defendant Demetrio Daniel Gutierrez appeals from an order denying his motion to suppress a gun seized from his car by an arresting officer without a warrant. Defendant also challenges the officer's right to run the serial number of the gun through the National Crime Information Center (NCIC) database. We affirm on the ground that the seizure of the gun was conducted pursuant to a lawful arrest and was therefore reasonable under the New Mexico and federal constitutions. We further hold that once the arresting officer had legal possession of the gun, nothing in the Fourth Amendment prevented him from running the NCIC check.

## I. BACKGROUND

{2} The material facts are undisputed. On June 19, 2000, Defendant was stopped for not wearing a seatbelt. The officer who stopped him issued a citation and ran a standard check to see if Defendant had any outstanding warrants. The check revealed that Defendant had an outstanding municipal court warrant for failure to appear. Because the officer planned to arrest Defendant, he called for backup, partly since there was a passenger in the car and also since it was standard procedure to call for backup before arresting anyone. When the backup officer arrived, the original officer took Defendant out of the car and arrested him. After Defendant was handcuffed, the officer asked Defendant if he had anything in his pockets that he wished to leave in his car before being taken to jail. The officer also asked Defendant if he wanted the passenger, who was also outside the car by this point, to take the car. Defendant told the officer that he could pull everything out of Defendant's pockets, and he gave permission for the passenger to take the car. One of the items the officer removed from Defendant's pockets was a bulky black pouch, which Defendant said contained ammunition.

{3} The officer then asked Defendant if he had a gun on him, and Defendant told him that he did not but that the officer could find

a gun in the front door pocket of the car on the driver's side. The officer testified that the passenger at that point was closer to the car than he was, that he had safety concerns, and that he retrieved the gun, a loaded automatic weapon, and took it to his car to run a check on it to see if it was stolen. Although Defendant told the officer it was his gun, the officer testified that he could not turn the gun over until he found out whether Defendant owned the gun. The officer also testified that for safety reasons, once he encounters a weapon, it is his standard procedure to check the weapon through the NCIC database. The check revealed that the weapon was stolen, and a further check revealed that Defendant was a convicted felon. Defendant was charged with being a felon in possession of a firearm. He subsequently moved to suppress the gun. The trial court denied the motion. Defendant entered a conditional guilty plea and reserved his right to appeal the denial of the suppression motion.

## II. DISCUSSION

### A. Standard of Review

{4} Review of a motion to suppress evidence involves a mixed question of fact and law. *State v. Paul T.,* 1999–NMSC–037, ¶ 8, 128 N.M. 360, 993 P.2d 74. In this case, the material facts are undisputed. Therefore, we apply a de novo standard of review to the trial court's application of law to the facts. *Id.*

### B. Defendant's Arguments

{5} Defendant makes three arguments in support of suppression. He does not challenge the initial stop for not wearing a seatbelt or his arrest on an outstanding warrant for failure to appear. Defendant also acknowledges that he told the officer that he could find a gun in the front pocket of Defendant's car on the driver's side. With this as a background, he argues that the warrantless seizure of a gun from his car during a routine traffic stop was unreasonable under both the federal and the state constitutions because there was no probable cause or exigent circumstances. Specific to this argument, Defendant states that the only issue is whether the officer violated the permissible scope of

the traffic stop and misdemeanor arrest when he continued to detain Defendant, seized the gun, and ran the gun through the NCIC database. Defendant also contends that because it is legal in New Mexico to keep a gun in a car, the officer violated Defendant's state constitutional right to bear arms. We begin our analysis with the issues related to the seizure of the gun and then turn to the check of the gun's serial number.

### 1. Seizure of the Gun Following Arrest

{6} Both the Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures. *See State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.1995). Under the exclusionary rule, "[e]vidence that is unconstitutionally obtained is inadmissible at trial." *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 9, 124 N.M. 661, 954 P.2d 93. Because a warrantless search or seizure is presumed to be unreasonable, the State has the burden of showing that the search or seizure was justified by an exception to the warrant requirement. *State v. Vasquez,* 112 N.M. 363, 366, 815 P.2d 659, 662 (Ct.App. 1991). Recognized exceptions to the warrant requirement include exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit. *State v. Duffy,* 1998–NMSC–014, ¶ 61, 126 N.M. 132, 967 P.2d 807 (1998).

{7} Defendant bases his argument on *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and contends that for the seizure to be permissible, the officer's actions during an investigative detention must be reasonably related to the circumstances justifying the stop. *Terry* involves an investigative detention when no arrest had occurred. *Id.* at 6–8, 88 S.Ct. 1868. The State counters that these arguments do not apply directly to this case because Defendant was not being detained but rather had been arrested on an outstanding warrant for failure to appear. We agree with the State and analyze this case as a search incident to

arrest. We begin with a review of the specific facts of this case.

{8} At the suppression hearing, the officer testified that he had handcuffed Defendant before he told the officer about the location of the gun, in the driver's side door pocket of the car's interior. He further testified that although the passenger was also outside the car, he had safety concerns because the passenger was closer than either of the officers to making an entrance to the car. Further, the officer testified that because he intended to release the car to the passenger, he did not believe he could simply hand the weapon over to the passenger. He knew nothing about the passenger and was also concerned about the safety of the public. The officer also testified that the weapon was automatic, it was loaded, and a round was in the chamber so that it was ready to fire at any moment. The officer checked the door pocket right after he was alerted to the presence of the gun and before Defendant was placed in the back of the police car. While we cannot predict what would have happened, it is clear that seizure of the gun from the car eliminated the possibility that the passenger would attempt to assist Defendant in resisting arrest or in effecting an escape.

{9} The issue is what the officer could lawfully do once Defendant, who was under arrest, told him that he had a gun in his car. Defendant argues that since he is appealing under both the federal and the state constitutions, this Court must apply the interstitial approach adopted in *State v. Gomez*, 1997–NMSC–006, ¶¶ 20–22, 122 N.M. 777, 932 P.2d 1. Although Defendant's argument does not address the legality of a search incident to arrest, Defendant's objections below and arguments on appeal are premised on violations of the state and the federal constitutions. Further, this Court in *State v. Arredondo*, 1997–NMCA–081, ¶ 11, 123 N.M. 628, 944 P.2d 276, *overruled on other grounds by State v. Steinzig*, 1999–NMCA–107, ¶ 29, 127 N.M. 752, 987 P.2d 409, cited to *Gomez* for the proposition that New Mexico does not accept the federal bright-line automobile exception and that Article II, Section 10, of the New Mexico Constitution requires a fact-specific inquiry into the reasonableness of

law enforcement action in searching an automobile. *Arredondo*, 1997–NMCA–081, ¶ 28, 123 N.M. 628, 944 P.2d 276. Accordingly, we will review this issue by using the interstitial approach enunciated in *Gomez*. With this approach, we review the suppression order under the United States Constitution, and if the right being asserted is not protected, we look to the New Mexico Constitution. *Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1.

{10} A search incident to arrest is considered reasonable without a warrant under the Fourth Amendment and constitutes an exception to the warrant requirement. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court stated that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." Additionally, the Court explained that officers could also search the area within the arrestee's immediate control—that is, "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. 2034. Under the Fourth Amendment, officers also have the authority to search the interior of the arrestee's vehicle, even after the arrestee is no longer in it. *New York v. Belton*, 453 U.S. 454, 457–60, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Under this standard, seizure of Defendant's gun does not violate the United States Constitution.

{11} We now turn to the New Mexico Constitution. In *Arredondo*, this Court clarified the requirements for a search incident to arrest under the state constitution:

A search incident to a lawful arrest may fall under an exception to the warrant requirement in the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution if the State meets its burden of proving that the search occurs as a contemporaneous incident to the lawful arrest of the

defendant and is confined to the area within the defendant's immediate control. *Arredondo,* 1997–NMCA–081, ¶ 27, 123 N.M. 628, 944 P.2d 276. Defendant does not challenge the arrest. Additionally, the officer did not search the vehicle for a concealed weapon; rather, it is undisputed that Defendant told the officer of the location of the gun. Thus, the officer actually knew, rather than only suspected, that Defendant had a gun in the car. *Arredondo* relies on *State v. Martinez,* 1997–NMCA–048, ¶¶ 6–8, 123 N.M. 405, 940 P.2d 1200, which cites to *Chimel* in formulating the test to be used under the New Mexico Constitution regarding searches incident to arrest of a person after a traffic stop. *Arredondo,* 1997–NMCA–081, ¶ 27, 123 N.M. 628, 944 P.2d 276. In weighing the safety concern of law enforcement officers, we acknowledged the risks of danger to an arresting officer in these unpredictable and highly charged situations. *Martinez,* 1997–NMCA–048, ¶ 7, 123 N.M. 405, 940 P.2d 1200. We noted that "[e]ven a handcuffed arrestee may be foolhardy enough to try to seize a nearby firearm." *Id.* We also observed that "the presence at the scene of persons other than the arrestee may justify searching for weapons in their immediate vicinity." *Id.* The facts in *Martinez* did not justify the search of a paper sack, since nothing indicated that the sack was within the area from which Defendant "might gain possession of a weapon or destructible evidence." *Id.* ¶ 6 (internal quotation marks, citation, and emphasis omitted). Similarly, the facts in *Arredondo* did not justify the search in a small hole in the dashboard of a defendant's vehicle, since the State made no showing of imminent danger that the drug evidence would be destroyed or concealed after a protective search of the vehicle had already been completed and the defendant was detained outside the vehicle. *Arredondo,* 1997–NMCA–081, ¶ 29, 123 N.M. 628, 944 P.2d 276. In this case, however, Defendant disclosed the location of the gun. Even though Defendant was handcuffed, the gun was located between the passenger and the officer. In *Martinez,* the officers testified that there was no immediate danger to their safety. *Martinez,* 1997–NMCA–048, ¶ 13, 123 N.M. 405, 940 P.2d 1200. In this case,

the officer testified about his safety concerns regarding the proximity of the passenger to the gun. We cannot say these concerns were unreasonable. *See also* 3 Wayne R. LaFave, *Search and Seizure* § 6.3(c)(4), at 307 (3d ed.1996) (stating that even when there is only one arrestee, "the presence of another person who might attempt to assist the suspect must be taken into account" (internal quotation marks, footnote, and citation omitted)).

{12} Defendant argues that even if this Court determines that the presence of the gun was a threat, the officer could have simply picked up the gun, unloaded it, and separated it from the ammunition. This argument fails to address the possibility that there may have been more ammunition in the car. Under the circumstances of this case, it was reasonable for the officer to seize the gun for safety reasons. We hold that based on an officer's reasonable safety concern, a warrantless seizure of a weapon within the area of immediate control of a person who is present during a custodial arrest does not violate the rights of the arrestee under the New Mexico Constitution.

## 2. Second Amendment

{13} In his second argument, Defendant points out that in New Mexico, a citizen has a constitutional right "to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes," a greater constitutional right than that afforded by the Second Amendment. N.M. Const. art. II, § 6. As the Tenth Circuit acknowledged in *United States v. King,* 990 F.2d 1552, 1563 n. 5 (10th Cir.1993), in New Mexico, it is lawful to carry a gun in a vehicle. *See* NMSA 1978, § 30–7–2(A)(2) (2001) (stating it is lawful in New Mexico to carry a firearm "in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property"). Defendant argues that in New Mexico, the presence of a gun does not provide probable cause or reasonable suspicion that a crime has or is occurring.

{14} As the Tenth Circuit stated in *King,* lawful possession of a gun has no bearing on the reasonableness of the officer's action to

separate a suspect from a firearm within his possession, such as seizing a weapon in a search incident to arrest, since the interest justifying the seizure is the officer's safety "and a legally possessed weapon presents just as great a danger to [the officer's] safety as an illegal one." *Id.* at 1561. The question, therefore, is whether the officer's safety was threatened by the presence of the gun in the car, making the gun's seizure reasonable. As one commentator has pointed out,

> [i]n contrast to the language in *Terry*, where it is required that the officer have reason "to conclude * * * that the persons with whom he is dealing may be armed and presently dangerous," *Chimel* speaks of a search for "*any* weapons" which the arrestee "*might* seek to use."

LaFave, *supra* § 5.2(b), at 71 (alteration in original). As we explained above, the seizure of the gun does not have to be related to the initial stop when, as in this case, it is justified on safety grounds during a search incident to arrest.

{15} Based on the specific facts of this case, we hold that the seizure complied with Article II, Section 10, and did not violate the right of individual citizens under Article II, Section 6, to keep and bear arms.

### 3. Serial Number Check

{16} Defendant argues that even if the initial seizure had been lawful, the search of the serial number was an unreasonable government invasion of Defendant's personal security, citing to *Terry*, 392 U.S. at 19, 88 S.Ct. 1868 (stating that Fourth Amendment analysis focuses on "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security"). It appears Defendant is arguing that the additional search of the serial number was unreasonable because it was entirely unrelated to the events leading to his arrest; that is, it was unrelated to either the seatbelt violation or the outstanding warrant. As we explained above, the seizure of the gun was incident to Defendant's arrest; therefore, we analyze the serial number check in that context.

{17} The State argues that the officer had a duty to determine the ownership of the weapon and the lawfulness of Defendant's possession of it. The only New Mexico case that mentions checking the serial number after seizure of a gun is *State v. Flores*, 1996–NMCA–059, 122 N.M. 84, 920 P.2d 1038, in which we stated, in dicta, that "[a]n NCIC search ... conducted during the investigatory stop[ ] would likely have been permissible." *Id.* ¶ 18 (citing *State v. Reynolds*, 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995), and *State v. Haar*, 110 N.M. 517, 524, 797 P.2d 306, 313 (Ct.App.1990)). *Reynolds* stands for the proposition that an examination of license, registration, and insurance documents did not intrude on legitimate privacy interests and was therefore not a search within the meaning of the Fourth Amendment. *Reynolds*, 119 N.M. at 386, 890 P.2d at 1318. *Haar* stands for the proposition that permitting a gun lawfully seized for other reasons to be test fired while police were looking for evidence of a crime was not a violation of legitimate privacy interests and not a search. *Haar*, 110 N.M. at 524, 797 P.2d at 313.

{18} The view expressed in *Flores* that further inspection of a gun lawfully in the possession of the police is not an additional intrusion on privacy interests finds support in cases from other jurisdictions. As the State argues, the United States Supreme Court set forth in *Arizona v. Hicks*, 480 U.S. 321, 324–25, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), that "the mere recording of ... serial numbers" did not constitute a seizure and that inspecting parts of equipment that came into view during a lawful search did not constitute an independent search. In addition, the State cites cases from the Third, Eighth, and Ninth circuits that support the recording of serial numbers on guns. *See United States v. Menon*, 24 F.3d 550, 562–63 (3d Cir.1994) (suggesting that consultation of a database to determine legality is a minimally intrusive inspection that does not violate the Fourth Amendment); *United States v. Watts*, 7 F.3d 122, 126–27 (8th Cir.1993) (stating that once officers obtained lawful possession of firearms, they were free to take down serial numbers and check to see if weapons were stolen); *United States v. Mines*, 883 F.2d 801, 804 (9th Cir.1989) (stat-

ing that "[o]nce the officers lawfully possessed the machine gun, it could be examined for serial numbers").

{19} Other cases also support the view that a serial number search is permissible if the object has been lawfully seized. *See, e.g., Wallace v. State,* 373 Md. 69, 816 A.2d 883, 891–93 (2003) (reiterating the principle that searches incident to lawful arrests are constitutional because the lawful arrest establishes the authority to search); *State v. Scott,* 156 N.J.Super. 421, 383 A.2d 1210, 1214 (1978) (upholding a "routine check of the serial numbers" of a gun lawfully seized during a search for drugs); *State v. King,* 89 Wash. App. 612, 949 P.2d 856, 861–62 (1998), (explaining that once the officer had lawful possession of the gun, "he needed no [additional] constitutional justification" to check the serial number). Following the reasoning used in these cases, since the officer in the case currently before this Court was legally in possession of the gun, running a search on the serial number was not an additional intrusion under the Fourth Amendment because Defendant no longer had a reasonable expectation of privacy in the weapon.

{20} Defendant cites us to no specific case to support an argument that the New Mexico Constitution provides him with more protection than does the United States Constitution in connection with serial number checks of lawfully seized objects. Accordingly, we do not address that argument. *See* Rule 12–213(A)(4) NMRA 2004; *see also Wolford v. Lasater,* 1999–NMCA–024, ¶ 18, 126 N.M. 614, 973 P.2d 866 (stating that issues raised but unsupported by cited authority will not be reviewed on appeal).

## III. CONCLUSION

{21} We affirm the trial court's denial of the motion to suppress on the ground that the seizure of the gun was reasonable under the New Mexico and federal constitutions. The seizure was conducted pursuant to a lawful arrest after Defendant had informed the officer that he had a gun in his car, which the officer considered releasing to Defendant's passenger. Once the officer was in lawful possession of the gun, he was permitted to check the serial number in the NCIC database.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and JONATHAN B. SUTIN, Judge.