This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                              **No. A-1-CA-34703**

**KAYLEE ORTIZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Defendant appeals from the district court's denial of her motion to suppress evidence. She argues that the State failed to meet its burden of proving that the warrantless search of her purse following her arrest either (1) met the requirements of the search-incident-to-arrest exception to the warrant requirement, or (2) would have occurred upon an inventory search at the jail, thereby bringing the evidence seized within the inevitable discovery exception to the exclusionary rule. We agree with Defendant and reverse.

**BACKGROUND**

{2}     On August 2, 2013, City of Clovis police officer Jonathan Howard went to Defendant's home to execute a warrant for Defendant's arrest for criminal trespassing. Officer Howard and another officer, Officer James Gurule, observed Defendant in the alley near her home and made contact with her there. Defendant was carrying a purse at the time, which Officer Howard searched after Officer Gurule placed Defendant under arrest. Officer Howard found a "small knife" in the purse as well as two flashlights that were identical in appearance but differed in weight, which Officer Howard described as "kind of suspicious." Officer Howard opened both flashlights and found a "baggie" containing what he believed was methamphetamine inside the lighter one. Defendant was subsequently charged

2

with one count of possession of a controlled substance in violation of NMSA 1978, Section 30-31-23(E) (2011).

{3}     Defendant filed a pre-trial motion to suppress the evidence discovered during the warrantless search of her purse. In response, the State argued that the search fell within the search incident to arrest exception to the warrant requirement. At the suppression hearing, Officer Howard was the only witness to testify for the State. The State elicited the following testimony from Officer Howard regarding what happened once he and Officer Gurule made contact with Defendant in the alley:

Prosecutor:        Was . . . Defendant carrying anything at the time?

Officer Howard:    She had a purse.

Prosecutor:        How was she carrying it?

Officer Howard:    Up over her shoulder.

Prosecutor:        At that time, was there anyone other than yourself, Officer Gurule, and . . . Defendant in the alley?

Officer Howard:    No, sir.

Prosecutor:        Did you arrest . . . Defendant pursuant to the warrant you knew of? . . .

Officer Howard:    Yes, sir, I told her she was under arrest . . . for the criminal trespass she had committed earlier.

3

Prosecutor: After placing her under arrest pursuant to that warrant, did you conduct any search?

Officer Howard: Yes, I went ahead and searched the purse.

Prosecutor: Did she make any comment to you when you started to search the purse?

Officer Howard: She wanted the purse to be given to her brother, and she had called [out] for him, but he wasn't there in the alley.

After Officer Howard described what he discovered during his search of Defendant's purse—including the "baggie" containing what he suspected to be methamphetamine that he located inside one of the flashlights inside the purse—the State next asked Officer Howard:

Prosecutor: And then what did you do with regard to the purse and with regard to . . . Defendant?

Officer Howard: We took 'em to the detention center, where we dropped . . . Defendant off. We left the purse, except for the—I think I left the knife, but I [handed] it to the people in the booking area. [I] took the flashlight with the methamphetamine back to the station.

Prosecutor: So, when you arrived at the station, . . . the purse was given to the booking agents at the detention facility?

Officer Howard: Yes, sir.

Prosecutor: But the flashlight containing the controlled substance was taken by you to the department to be logged into evidence?

Officer Howard:    Yes, sir, and to be field tested.

The State elicited no further testimony from Officer Howard regarding the search or his activities related to Defendant's arrest.

{4}     In asking the district court to deny Defendant's motion, the State argued that the search-incident-to-arrest exception to the warrant requirement applied to this case. Specifically, the State argued that "in this case, the purse was on the shoulder of . . . Defendant at the time the arrest was effected" and that the purse "was certainly within her immediate control." The State pointed to no other evidence supporting a finding that the search occurred incident to arrest, advanced no other arguments as to other exceptions to the warrant requirement or the exclusionary rule, and proffered no additional evidence to support an alternative basis for finding the warrantless search to be constitutionally reasonable.

{5}     The district court found that the search of Defendant's purse was incident to her arrest based on the fact that Defendant was "wearing the purse, she's got the purse on her person" and that "it's the same thing as searching a person's pockets when you arrest someone." The district court additionally found that "when you go to the jail, if you've got the purse with you, it's going to be searched at the jail." The district court then stated, "I think there's probably an inevitable discovery rule. It would have been . . . searched at some point anyway." The district court

concluded that a warrant was not required because (1) the search was incident to a lawful arrest, and (2) "the purse would have been searched at the jail pursuant to their policy, anyway, and the contents would have been logged in[] . . . [at] the jail, and the items would've been found at that time anyway, so inevitable discovery also would have resulted in the seizure of this evidence." Thus, the district court denied Defendant's motion to suppress the evidence seized from her purse. Defendant was subsequently convicted by a jury of possession of a controlled substance.

**DISCUSSION**

**Standard of Review**

{6}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We review "factual matters with deference to the district court's findings if substantial evidence exists to support them," *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183, and we review the legal conclusions of the district court de novo. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95.

**Warrantless Searches Are Presumptively Unreasonable, and the State Bears the Burden of Proving the Reasonableness of a Warrantless Search**

6

**{7}** "Both the Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures." *State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. "Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." *Rowell*, 2008-NMSC-041, ¶ 10 (internal quotation marks and citation omitted). "One of the most firmly established exceptions to the warrant requirement is the right on the part of the government . . . to search the person of the accused when legally arrested." *Id.* ¶ 13 (internal quotation marks and citation omitted). Known as a search incident to arrest, this exception includes searching not only the person of the accused but also the area within the arrestee's "immediate control." *See State v. Arredondo*, 1997-NMCA-081, ¶ 27, 123 N.M. 628, 944 P.2d 276, *overruled on other grounds by State v. Steinzig*, 1999-NMCA-107, ¶ 29, 127 N.M. 752, 987 P.2d 409. The exception is not unlimited, and "the [s]tate bears the burden of proving the reasonableness" of the search by demonstrating through the presentation of evidence the applicability of the exception. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025.

**{8}** To prove the reasonableness of a search incident to arrest, the state must prove that the search "occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control." *Arredondo*, 1997-NMCA-081, ¶ 27. Specifically, the state "must prove the ability of the [arrestee] to gain possession of a weapon to use against the officer, or to gain possession of evidence and conceal or destroy it." *State v. Rowell*, 2007-NMCA-075, ¶ 20, 141 N.M. 783, 161 P.3d 280, *rev'd on other grounds by Rowell*, 2008-NMSC-041, ¶ 36; *see Chimel v. California*, 395 U.S. 752, 763 (1969) (construing the phrase "within [the defendant's] immediate control" as meaning "the area from within which he might gain possession of a weapon or destructible evidence" (internal quotation marks omitted)). Where the state makes no showing either that a weapon is accessible to the arrestee or that there exists a danger that additional evidence might be destroyed or concealed, the state has not met its burden of establishing the reasonableness of the search incident to arrest. *See Rowell*, 2008-NMSC-041, ¶ 25; *Arredondo*, 1997-NMCA-081, ¶ 29. That is because New Mexico's "search incident to arrest exception is a rule of reasonableness anchored in the specific circumstances facing an officer." *Rowell*, 2008-NMSC-041, ¶ 24. Where there is no evidence that the warrantless search was based on "the practical need to prevent the arrestee from destroying

8

evidence or obtaining access to weapons or instruments of escape," the search is not reasonable. *Id.* ¶ 13.

{9}     Here, the only basis the State provides to justify the warrantless search of Defendant's purse is "that Defendant was arrested with the purse on her shoulder" and that Officer Howard "searched the purse and flashlight immediately after placing Defendant under arrest." For clarification, we note that Officer Howard did not testify that "Defendant was arrested with the purse on her shoulder" as the State characterizes the evidence on appeal. Officer Howard testified that when he and Officer Gurule made contact with Defendant in the alley, she "was carrying a purse . . . up over her shoulder." Nothing in Officer Howard's testimony either establishes or even suggests that the purse remained either on Defendant's shoulder after she was placed under arrest or, critically, within her "immediate control," i.e., "the area from within which [s]he might gain possession of a weapon or destructible evidence[,]" at the time Officer Howard searched it. *Chimel*, 395 U.S. at 763. The fact that a person is carrying a purse, bag, or other container at the time police make contact with her in executing an arrest warrant does not alone provide an officer per se authority to search the item. *See State v. Armendariz-Nunez*, 2012-NMCA-041, ¶ 10, 276 P.3d 963 (explaining that this Court "has eschewed bright-

9

line rules and instead emphasized the fact-specific nature of the reasonableness inquiry" (alterations, internal quotation marks, and citation omitted)). Indeed,

> [o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence[,] the search of that property is no longer an incident of the arrest.

*State v. Kaiser*, 1978-NMCA-023, ¶ 13, 91 N.M. 611, 577 P.2d 1257 (internal quotation marks and citation omitted). We conclude that on the limited evidence in the record, the State failed to meet its burden of proving that Officer Howard's search of Defendant's purse—including his removal and disassembly of the flashlights he found inside—was reasonable as a search incident to arrest. *See generally State v. Saiz*, 2008-NMSC-048, ¶ 17, 144 N.M. 663, 191 P.3d 521 (observing that the well-recognized exception to the warrant requirement for searches incident to a custodial arrest permits "the search of an arrestee's person and *any other area within the arrestee's access*" (emphasis added)), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783.

{10}     We next consider whether the inevitable discovery doctrine—the alternative basis on which the district court relied to deny Defendant's motion to suppress—may nevertheless save the evidence seized from Defendant's purse from exclusion.

10

**Applicability of the Inevitable Discovery Doctrine**

{11}     "Under the exclusionary rule, evidence that is unconstitutionally obtained is inadmissible at trial." *Gutierrez*, 2004-NMCA-081, ¶ 6 (alteration, internal quotation marks, and citation omitted). "The inevitable discovery doctrine is an exception to the exclusionary rule that permits the admission of unlawfully seized evidence if that evidence would have been seized independently and lawfully in due course." *State v. Barragan*, 2001-NMCA-086, ¶ 18, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The rule of inevitable discovery provides that "evidence originally obtained through illegal means, which would, in all likelihood, inevitably have been discovered through independent lawful means, is admissible at trial." *State v. Corneau*, 1989-NMCA-040, ¶ 37, 109 N.M. 81, 781 P.2d 1159. Establishing, for example, that a standard inventory search following arrest would have independently led to the seizure of the same evidence obtained through the initial unlawful seizure may provide a proper basis for a district court to conclude that the evidence should not be excluded. *See State v. Johnson*, 1996-NMCA-117, ¶¶ 18, 19, 22, 122 N.M. 713, 930 P.2d 1165. "[T]he inevitable discovery doctrine requires a trial court to make factual determinations," meaning that the state must present

11

sufficient evidence to support a factual finding of inevitable discovery. *Barragan*, 2001-NMCA-086, ¶¶ 17-18.

{12}   To prevail under the theory of inevitable discovery based on an inventory search, the state must introduce, inter alia, evidence allowing the district court to find that "an inventory that would have revealed the [improperly seized evidence] was standard procedure." *Id.* ¶ 18. As with all warrantless search and seizure analyses, the touchstone for determining the constitutionality of an inventory search is whether it was reasonable. *See State v. Ruffino*, 1980-NMSC-072, ¶ 5, 94 N.M. 500, 612 P.2d 1311 (explaining that one of the "requirements for an inventory search" is that it "must be reasonable"). "[I]nventory searches are presumed to be unreasonable[,] and the burden of establishing their validity is on the [s]tate." *State v. Davis*, 2018-NMSC-001, ¶ 11, 408 P.3d 576 (internal quotation marks and citation omitted). "An inventory search is reasonable if it is made to protect the arrestee's property, to protect police against claims of lost or stolen property, or to protect police from potential danger." *Johnson*, 1996-NMCA-117, ¶ 15. Thus, "[a] search for purposes of making an inventory can include the search of containers so long as it is conducted according to established procedure." *Id.*; *see Davis*, 2018-NMSC-001, ¶ 12 ("An inventory search is valid if (1) the police have control or custody of the object of the search[,] (2) the

12

inventory search is conducted in conformity with established police regulations[,] and (3) the search is reasonable.").

{13} Where there is evidence that "it was standard procedure to conduct an inventory search" upon taking an arrestee to a detention facility, the evidence seized as a result of the inventory search is admissible under the doctrine of inevitable discovery. *See Johnson*, 1996-NMCA-117, ¶¶ 6, 18, 19, 22 (explaining that "the officers testified that it was standard procedure to inventory all personal belongings of intoxicated persons brought in for detoxification" and thus concluding that "an inventory search of [the d]efendant's belongings was inevitable"); s*ee also State v. Romero*, 2001-NMCA-046, ¶¶ 15-17, 130 N.M. 579, 28 P.3d 1120 (explaining that a deputy testified regarding the "standard procedure" used to inventory the personal items of an arrestee as well as the purpose of the inventory search, and concluding that based on that testimony, "the [s]tate met its burden in demonstrating that the cocaine would have been inevitably discovered during a lawful inventory search pursuant to the arrest"). Where, however, there is "no evidence regarding a standard inventory procedure[,]" this Court has rejected the inevitable discovery doctrine as a basis for affirming denial of a suppression motion. *Barragan*, 2001-NMCA-086, ¶ 18; *see Arredondo*, 1997-NMCA-081, ¶¶ 30, 32 (holding that the state "did not meet its burden of proving that the seizure

of cocaine [from a small hole in the dashboard of the defendant's vehicle] was justified as the inevitable result of an inventory search" where "the [s]tate pointed to no evidence in the record to establish that an inventory search of [the d]efendant's vehicle was made pursuant to established police regulations").

{14} Here, as in *Barragan* and *Arredondo*, there was no evidence adduced whatsoever regarding inventory procedures at the detention center to which Defendant was taken. Notably, the State did not even advance the inevitable discovery doctrine as a basis for denying Defendant's motion, instead relying solely on its theory that the search was permissible as incident to Defendant's arrest. It was the district court that sua sponte suggested that the inevitable discovery rule might apply. Even assuming arguendo that the district court's sua sponte observation that Defendant's purse "would have been searched . . . at some point anyway" could be construed as taking judicial notice of the fact that an inventory search would have been conducted at some point, there is no evidence in the record either that the unidentified detention center where Defendant was taken had a standard inventory procedure or that the facility's inventory procedure included as a standard practice searching a container within a container. *Cf. Romero*, 2001-NMCA-046, ¶¶ 16-17; *Johnson*, 1996-NMCA-117, ¶ 18. Therefore,

we conclude that the State did not meet its burden of proving the applicability of the inevitable discovery exception.

**{15}** Our Supreme Court has cautioned that New Mexico courts "cannot excuse an unlawful search in violation of the constitutional rights of any citizen when police could have performed a lawful search but failed to do so." *State v. Haidle*, 2012-NMSC-033, ¶ 41, 285 P.3d 668. "Where the state has transgressed the constitutional rights of a person accused of a crime, we will not sanction that conduct by turning the other cheek." *Id.* (internal quotation marks and citation omitted). In noting and relying on the fact that inventory searches are customary, the district court effectively adopted the same "sweeping [the police]-could-have-done-it-lawfully-so-it-doesn't-matter-that-[they]-didn't view of the limited inevitable discovery exception" that our Supreme Court rejected in *Haidle*. *Id.* ¶ 39. Because the record, here, is void of even a scintilla of evidence that would allow anything more than a speculative conclusion that the "baggie" inside the flashlight inside Defendant's purse would have been found upon her arrival at the detention facility, we conclude that the district court erred in finding that the discovery of the illegally seized evidence was inevitable.

**CONCLUSION**

{16}    For the foregoing reasons, we reverse the district court's denial of Defendant's motion to suppress the evidence seized from her purse and remand to the district court for further proceedings in light of this opinion.

{17}    **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**STEPHEN G. FRENCH, Judge**