2006-NMCA-006

127 P.3d 1116

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael PITTMAN, Defendant–Appellant.**

**No. 24,671.**

Court of Appeals of New Mexico.

Nov. 23, 2005.

Certiorari Granted, No. 29,584, Jan. 10, 2006.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

SUTIN, J.

{1} We consider the legality of a search of Defendant's car that occurred after Defendant was arrested, handcuffed, and placed in a patrol car. We conclude that under Article II, Section 10 of the New Mexico Constitution the search was illegal. We reverse the district court's denial of Defendant's motion to suppress and remand for further proceedings.

## BACKGROUND

{2} Hobbs police officer Orin Tubbs saw Defendant's Cadillac pull out into traffic, on the opposite side of the roadway, from an apartment parking lot without stopping. He decided to stop Defendant, turned on his emergency equipment, and began a u-turn. As he did so, he saw Defendant pull into the parking area of an apartment building, park his car, quickly get out of the car, and lock the door. There were no other occupants in the car.

{3} Officer Tubbs pulled into the parking lot and asked for Defendant's license and registration. Defendant returned to his car, opened the passenger door, and retrieved the requested documents. The officer ran a wants and warrants check and discovered that there was an outstanding warrant for Defendant's failure to appear in municipal court. Based on that discovery, he arrested Defendant, handcuffed him, and put him in the rear seat of his patrol car.

{4} At that point, Defendant asked the officer to give the car keys to his grandmother, who Defendant said lived in the apartment complex. The officer took the keys, but chose instead to unlock Defendant's car and search it. He found a loaded .40 caliber handgun underneath the driver's seat. Officer Tubbs testified that at the time he searched the car, he did not feel he was in any danger, nor did he expect to find any evidence in the car related to the arrest for failure to appear.

{5} Defendant was charged with a traffic violation and with being a felon in possession of a firearm. He moved to suppress the evidence. The court denied the motion, whereupon Defendant entered a conditional no contest plea to the crime of felon in possession of a firearm reserving the right to appeal the suppression issue.

## DISCUSSION

### STANDARD OF REVIEW

{6} We review the denial of a motion to suppress by first reviewing the district court's factual determinations for substantial evidence in a light favorable to the prevailing party and then by reviewing the legal conclusions de novo. *State v. Garcia,* 2005–NMSC–017, ¶ 27, 138 N.M. 1, 116 P.3d 72; *see also State v. Attaway,* 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994) (addressing the district court's exigency determination, determining that the question "extends beyond fact-finding and implicates an assessment of broader legal policies that the New Mexico Constitution entrusts to the reasoned judgment of the appellate courts of this state," and concluding that the mixed question of fact and law involved in determining exigent circumstances "lies closest in proximity to a conclusion of law" and "that such determinations are to be reviewed de novo").

### SEARCH INCIDENT TO ARREST

{7} The State seeks to validate the search of Defendant's car as a search incident to arrest. The United States Supreme Court in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), held a search incident to an arrest justifiable as an exception to the warrant requirement under two rationales: the need to remove a weapon the arrestee might use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence. *Id.* at 762–63, 89 S.Ct. 2034. Those two rationales are

still applied. *Thornton v. United States*, 541 U.S. 615, 620, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); *see State v. Martinez*, 1997–NMCA–048, ¶¶ 6–8, 123 N.M. 405, 940 P.2d 1200 (citing to *Chimel* in formulating the test to be used under the New Mexico Constitution regarding searches incident to arrest of a person in his home).

{8} *Chimel* described the spacial area of concern to be an area "into which an arrestee might reach." 395 U.S. at 763, 89 S.Ct. 2034. Application of this spacial limitation became problematic in later cases when the arrest involved an occupant of a vehicle, and over the years the Supreme Court widened the area of the arrestee's "reach" in considering his temporal and spacial relationship to the vehicle. *See Thornton*, 541 U.S. at 620, 124 S.Ct. 2127; *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

{9} Underlying the weapon removal rationale for a search incident to an arrest is a very "legitimate and weighty" concern for officer safety. *See Knowles v. Iowa*, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (internal quotation marks and citation omitted); *see also State v. Gutierrez*, 2004–NMCA–081, ¶ 11, 136 N.M. 18, 94 P.3d 18 (permitting a search of an automobile incident to arrest where the defendant reported that there was a weapon in the vehicle and a passenger had access to it under an officer safety rationale); *cf. State v. Paul T.*, 1999–NMSC–037, ¶¶ 10, 11, 14, 128 N.M. 360, 993 P.2d 74 (considering the *Terry* search circumstances "in light of a concern for officer safety").

■ {10} The evidence concealment/destruction rationale for a search incident to an arrest is based on the need to act quickly or else lose critical evidence of a crime which the police have probable cause to believe the suspect committed. *See Cupp v. Murphy*, 412 U.S. 291, 296, 301, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (Douglas and Brennan, JJ., dissenting in part) (determining, in accordance with *Chimel*, that a limited search to "preserve the highly evanescent evidence" under a detainee's fingernails to be appropriate, agreeing with the Court "that exigent

circumstances existed making it likely that the fingernail scrapings ... might vanish if [the detainee] were free to move about"). When there is no such critical evidence to be found either on an occupant or in the vehicle, a search is unreasonable if purportedly done under the evidence concealment/destruction rationale. *See Knowles*, 525 U.S. at 119, 119 S.Ct. 484 (declining to extend the authority to conduct a search incident to an arrest "to a situation where the concern ... for destruction or loss of evidence is not present at all").

{11} "[*Belton* ] ... held that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest." *Thornton*, 541 U.S. at 617, 124 S.Ct. 2127. *Belton* became the Supreme Court's most influential case in *Chimel* automobile search situations. As set out in LaFave's treatise on search and seizure, "[g]iven the *Belton* majority's avowed purpose of foreclosing the need for case-by-case determinations of an arrestee's control of the car" and its abandonment of the *Chimel* "immediate control" requirement for a broader rule, many federal and state cases have held that a search of a car incident to arrest is valid even if the arrestee is safely placed in the police car. 3 Wayne R. LaFave, *Search and Seizure* § 7.1(c) at 517–18 & n. 89 (4th ed.2004) (citing cases and noting Justice Brennan's statement in his dissent in *Belton* that "the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car before placing them under arrest" (internal quotation marks omitted)).

{12} Interestingly, *Thornton* involved a vehicle search after the arrestee was handcuffed and placed in a patrol car. However, these facts were not pertinent to the issue addressed by the Supreme Court. *See Thornton*, 541 U.S. at 617, 124 S.Ct. 2127. In *Thornton*, the issue on certiorari was whether the rule in *Belton* "is limited to situations where the officer makes contact with the occupant while the occupant is inside the vehicle, or whether it applies as well

when the officer first makes contact with the arrestee after the latter has stepped out of his vehicle." *Thornton,* 541 U.S. at 617, 124 S.Ct. 2127. The Supreme Court held in *Thornton* that police may search an automobile as a search incident to arrest "even when an officer does not make contact until the person arrested has left the vehicle." *Id.* The Court permitted a search so long as an arrestee is "the sort of 'recent occupant' of a vehicle such as petitioner was here." *Id.* at 623–24, 124 S.Ct. 2127. Because it was outside the question on which the Court granted certiorari, the majority in *Thornton* declined to address the defendant's argument that the Court "should limit the scope of *Belton* to recent occupants who are within reaching distance of the car." *Thornton,* 541 U.S. at 622 n. 2, 124 S.Ct. 2127 (internal quotation marks omitted).

## INTERSTITIAL AND NEW MEXICO CONSTITUTIONAL ANALYSES

■ {13} When a defendant, as here, appeals under both the federal and state constitutions, we apply the interstitial approach to constitutional analysis. *See State v. Gomez,* 1997–NMSC–006, ¶¶ 17, 19, 122 N.M. 777, 932 P.2d 1; *Gutierrez,* 2004–NMCA–081, ¶ 9, 136 N.M. 18, 94 P.3d 18. If the right being asserted is protected under the federal constitution, we need not reach the state constitutional claim. *Gomez,* 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1. If Defendant's rights are not fully protected under the federal constitution, we must then determine whether the state constitution provides broader protection. *See id.* We may diverge from federal precedent if distinctive state characteristics require a different result. *See id.* ¶¶ 19–20 (listing three independent reasons which justify departure from federal constitutional law precedent, including "a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics"). Based on *Belton, Thornton,* and the body of case law upholding vehicular searches incident to arrest as listed in LaFave, *supra,* at 517 n. 89, we think it apparent that Defendant is not

likely to prevail under the federal constitution. We therefore examine New Mexico law.

■ {14} New Mexico law expresses a strong preference for a warrant. *Gomez,* 1997–NMSC–006, ¶ 36, 122 N.M. 777, 932 P.2d 1. When a defendant challenges the validity of a search, the State bears the burden of proving facts that justify a warrantless search. *See id.* ¶ 39 (stating that "a warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances"). Under Article II, Section 10 of the New Mexico Constitution, our courts have provided criminal defendants greater protection against searches than that provided under the United States Constitution.[1] *See, e.g., State v. Cardenas–Alvarez,* 2001–NMSC–017, ¶ 12, 130 N.M. 386, 25 P.3d 225 (listing various situations in which we have interpreted our state constitutional search and seizure provision more expansively than federal precedent); *State v. Marquart,* 1997–NMCA–090, ¶ 16, 123 N.M. 809, 945 P.2d 1027 (same). In particular, we have departed from federal search and seizure precedent when automobiles are involved. *See Cardenas–Alvarez,* 2001–NMSC–017, ¶ 15, 130 N.M. 386, 25 P.3d 225; *Gomez,* 1997–NMSC–006, ¶¶ 39, 44, 122 N.M. 777, 932 P.2d 1. Significantly, in departing from federal precedent, our Supreme Court in *Cardenas–Alvarez* said that "[t]he extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law." 2001–NMSC–017, ¶ 15, 130 N.M. 386, 25 P.3d 225. This extra layer of protection for automobiles was again recognized and confirmed recently in *Garcia,* 2005–NMSC–017, ¶ 29, 138 N.M. 1, 116 P.3d 72. *Garcia* notes that federal precedent expansively allows for searches of and seizures from a car without a warrant, but that "New Mexico law departs from federal precedent on this issue" and that the state constitution "provides greater protection, requiring a warrant or the presence of exigent circumstances to remove evidence." *Id.*

---

1. According to LaFave, several states "have declined to permit searches in as broad a set of circumstances as *Belton* would authorize." *See*

LaFave, *supra,* § 7.1(a), at 505 n. 24. *But see* LaFave, *supra,* § 7.1(c), at 517–18 nn. 89–93.

{15} Exigent circumstances embrace "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Gomez,* 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (internal quotation marks and citation omitted); *accord Garcia,* 2005–NMSC–017, ¶ 30, 138 N.M. 1, 116 P.3d 72. New Mexico has rejected the federal bright-line rule authorizing a search of the passenger compartment of a vehicle pursuant to a search incident to arrest. *State v. Arredondo,* 1997–NMCA–081, ¶ 28, 123 N.M. 628, 944 P.2d 276, *overruled on other grounds by State v. Steinzig,* 1999–NMCA–107, ¶ 29, 127 N.M. 752, 987 P.2d 409; *see also Garcia,* 2005–NMSC–017, ¶ 29, 138 N.M. 1, 116 P.3d 72 (noting that federal precedent allows warrantless vehicle searches "based on a bright line automobile exception to the warrant requirement" and that the New Mexico Constitution provides greater protection). Rather, our law endorses a "fact-specific inquiry under the particular facts of this case." *Arredondo,* 1997–NMCA–081, ¶ 28, 123 N.M. 628, 944 P.2d 276.

## THE SEARCH WAS UNLAWFUL

{16} Given that we have rejected *Belton*'s bright-line approach under the federal constitution, we now turn to the protections guaranteed under New Mexico's Constitution. Because of New Mexico's strong preference for a warrant, we hold that even after a valid arrest, one of *Chimel*'s two rationales must be present before an officer may search a vehicle without a warrant. Applying this extra layer of protection, neither *Chimel* rationale supported the search of Defendant's vehicle in this case. Defendant posed no danger to the officer's safety, and the officer knew of no evidence a search and seizure would preserve from destruction. *See Martinez,* 1997–NMCA–048, ¶¶ 7, 12, 13, 15, 123 N.M. 405, 940 P.2d 1200 (holding the search incident to an arrest in a bedroom of the defendant's home unlawful where the officers testified there was no threat to their safety, they did not sense immediate danger, and nothing indicated that the evidence seized was within an area from which the

defendant "might gain possession of a weapon or destructible evidence," and noting that an officer's evaluation of danger is indicative of the facts at the time of the search (internal quotation marks and citation omitted)).

{17} In the present case, Defendant, handcuffed and secured in the patrol car, posed no danger to the officer. *See Ferrell v. State,* 649 So.2d 831, 833 (Miss.1995) (holding that where the defendant was arrested, handcuffed, and placed in the patrol car, the subsequent search of a container in his car was not incident to arrest because the officer could have no reasonable fear that the defendant might have access to a weapon); *cf. State v. Kaiser,* 91 N.M. 611, 613–14, 577 P.2d 1257, 1259–60 (Ct.App.1978) (holding that exigent circumstances did not exist to search the defendant's luggage where he had already been placed in custody). Nothing in the record indicates that the officer ever had any intention of searching the car until Defendant unexpectedly presented him with the keys. The facts belie danger or urgency.

{18} The State's reliance on *Gutierrez* and *Arredondo* is misplaced. In *Gutierrez,* the defendant, who was arrested, told the officer there was a handgun in his car, under circumstances where a passenger who was not arrested was near the car, and the gun was located between the passenger and the officer. 2004–NMCA–081, ¶ 11, 136 N.M. 18, 94 P.3d 18. We held that under those circumstances it was reasonable for the officer to search and seize the gun for safety reasons. *Id.* ¶¶ 11–12. In *Arredondo,* the defendant was stopped because he was suspected in connection with an assault involving a gun that had just been reported, thus, we held that the officer's reasonable belief that the suspect was armed and dangerous amounted to an exigent circumstance justifying the search. 1997–NMCA–081, ¶¶ 18–19, 123 N.M. 628, 944 P.2d 276.

{19} We are unpersuaded by the State's attempts to create a sense of danger and urgency by characterizing the grandmother as an unknown, possibly sinister person who might use the gun to try to help Defendant escape, or who might pose some danger to the public. During the suppression hearing,

no testimony was elicited about the grandmother's nature or the officer's judgment of her nature. Moreover, if the officer really feared possible consequences from delivering the keys to Defendant's grandmother, he had the option of keeping the car keys and transporting Defendant to jail.

{20} The State includes the public as an endangered target from the presence of the gun in the passenger compartment. We disagree. A gun in a car does not automatically constitute either danger or exigent circumstances. *See Garcia*, 2005-NMSC-017, ¶ 31, 138 N.M. 1, 116 P.3d 72. The presence of the gun in Defendant's locked car parked in the parking area of the grandmother's apartment complex, without more, did not create a danger to the public or exigent circumstances.

{21} The State also relies on Defendant's driving, conduct, and a prior conviction for conspiracy to commit armed robbery, to argue perceived danger or, at the very least, that the officer "possessed a reasonable concern" that Defendant might have hidden a weapon under the seat. We reject these arguments. The State has exaggerated Defendant's traffic offense. It asserts that the officer had observed "wildly inappropriate driving" and that Defendant had "raced" out of the parking lot into the street. The officer's actual testimony was that Defendant "didn't slow down" when entering the roadway. At most, we are presented with a garden variety traffic offense. We also disagree that Defendant's act of "carefully" obtaining required documents through the passenger side suggested that a weapon was in the car. Many people keep their documentation in the glove box, which is located on the passenger side. Moreover, the officer expressed no concern about the manner in which Defendant retrieved the documents.

{22} We also reject the State's assertion that, upon stopping Defendant, the officer learned through a computer check that Defendant had a prior conviction for a violent felony, and that this information could provide justification for the search. Officer Tubbs never testified that before his search of the car, he knew or relied on the fact that Defendant had been convicted of a violent felony. The State never argued in the district court that the officer's awareness of Defendant's criminal history was a reason to support a finding of any concern for danger. In support of its assertion, the State cites only to a criminal complaint against Defendant after his arrest. But the criminal complaint is far from clear on this point. The complaint discusses the computer check, but does not state when the computer check showing the prior conviction was conducted. The manner in which the complaint is written strongly suggests that the officer learned of the prior felony after he conducted the search. Additionally, in the suppression proceedings, the State never referred to or relied on the criminal complaint. Most importantly, regardless of when the officer learned of Defendant's prior conviction, the officer testified that he did not believe that Defendant presented a danger to him once he was handcuffed and placed in the patrol car.

{23} The State asserts that "[e]ven a handcuffed arrestee may be foolhardy enough to try to seize a nearby firearm." *Martinez*, 1997-NMCA-048, ¶ 7, 123 N.M. 405, 940 P.2d 1200. It argues that we should defer to the judgment of police officers, regarding danger, in a swiftly-developing situation. *See id.* ¶¶ 7-8 (stating that "we must be sensitive to the dangers to law enforcement officers in an unpredictable and highly charged situation"). We agree with these propositions, but they do not apply here. At the time of the search, the situation had been neutralized by handcuffing Defendant and placing him in the patrol car. The officer expressed no safety concern. This was not a swiftly-developing situation. Handcuffed and secured in the patrol car, Defendant had no realistic opportunity to escape, wrestle the car keys from the officer, rush over to his locked car, unlock the door, and seize the weapon from under the seat. The circumstances simply do not justify this search.

{24} Turning to the question of preservation of evidence, the State argues general rules with respect to the propriety of a search to assure that evidence left in a parked car or in a car released to someone else is preserved. However, the State does not tie the general rules to the facts in this

case. Here, the officer had no such evidence in mind. We do not see how the officer could have reasonably believed that evidence would be found in Defendant's car connected with his charge for failing to appear in court. *See Ferrell*, 649 So.2d at 833 (holding that search was not incident to arrest where the defendant was locked in the patrol car and the officer could have no reason to think that evidence related to the arrest for driving on a suspended license would be found in the car). Furthermore, if the officer was afraid that the grandmother might destroy evidence, he did not have to comply with Defendant's request that he give the keys to her, or he could have sought a warrant before searching the vehicle. *See Gomez*, 1997–NMSC–006, ¶ 44, 122 N.M. 777, 932 P.2d 1 (stating that "if there is no *reasonable* basis for believing an automobile will be moved or its search will otherwise be compromised by delay, then a warrant is required").

{25} We conclude that a departure from federal precedent is warranted in this case because of distinctive state characteristics, as noted in a sufficiently developed body of New Mexico case law. The State must justify a warrantless search of an automobile incident to arrest through articulated facts in the record showing a reasonable likelihood of either a potential danger or the concealment or destruction of evidence. Here, the officer engaged in exploratory rummaging after receiving keys that were to be delivered to Defendant's grandmother. The officer was not concerned about any danger Defendant might pose, and, in fact, Defendant posed no danger. Additionally, the State did not demonstrate that the car would contain any evidence related to Defendant's warrant for failure to appear. Nothing in the record reflects any knowledge on the officer's part of Defendant's felony record before the officer searched Defendant's vehicle. Under these circumstances, the search cannot be characterized as reasonable under Article II, Section 10 of the New Mexico Constitution.

**THE DISSENT**

{26} We have several observations in regard to the Dissent in this case.

{27} The Dissent states that the real issue in this case is whether the arresting officer misrepresented his intentions when he searched the car before delivering the car keys to Defendant's grandmother and whether the search was reasonable under the circumstances. Following this statement, the Dissent sets out its position in two sections, one called "search by deception," the other called "government's justification of an inventory search."

{28} A premise throughout the Dissent seems to be that the delivery of the keys after Defendant locked up his car constituted "consent" of some sort. The officer, however, never requested consent to search the car and Defendant never provided it. "[A] mere showing that an accused gave officers the keys to her car upon their request was insufficient to show a voluntary waiver of her Fourth Amendment rights." *Hall v. State*, 399 So.2d 348, 353 (Ala.Crim.App. 1981). Here we have neither a request nor any conversation concerning a search and no apprehension by Defendant that the officer would undertake a search once he had the keys.

{29} Under the "search by deception" section, the Dissent states that the officer conducted an inventory search. The Dissent also states that the search stemmed from Defendant's consent. The concerns we have with this aspect of the Dissent are: (1) the State nowhere asserts that the search the officer conducted was an inventory search; (2) there is no evidence that Defendant consented to any search whatsoever; and (3) after raising search by deception as an important issue, the Dissent actually concludes that search by deception does not violate the Fourth Amendment or the New Mexico Constitution.

{30} Under the "government's justification of an inventory search" section, the Dissent acknowledges that the State raises the issue for the first time on appeal that the officer could have conducted an inventory search. The State's argument below was that the search was valid because it was a search incident to an arrest. The Dissent nevertheless feels compelled to address the question, and to do so not based on any right of the State but rather based on a right of

Defendant, namely, Defendant's fundamental right of privacy. We do not see how Defendant's fundamental rights or general public importance justifies the Dissent's position, given the State's failure to preserve.

{31} The Dissent's ultimate determination is that the search was reasonable and justified because the officer had an "obligation to secure the car" and, in order to fulfill that obligation the officer "had to inventory its contents to avoid any liability from any claims that something valuable might be taken from the car." Based on *United States v. Prazak,* 500 F.2d 1216 (9th Cir.1974), the Dissent interprets Defendant's request to the officer to give the keys to his grandmother to instead be a request to park and secure his car. No facts in either *Prazak* or the present case support any such interpretation. Defendant's car was already parked where his grandmother resided and Defendant's only request was that the keys be delivered to his grandmother. The State did not argue below or on appeal this new theory that the Dissent raises.

## CONCLUSION

{32} The district court erred when it failed to suppress the evidence gathered as a result of an unconstitutional search of Defendant's vehicle. We therefore reverse and remand for further proceedings consistent with this opinion.

{33} **IT IS SO ORDERED.**

KENNEDY, J., concurs.

ROBINSON, Judge (dissenting).

ROBINSON, Judge (dissenting).

{34} I am unable to concur in the holding of the Majority's opinion that the search of Defendant's car was unreasonable. In addition, while I do agree that under New Mexico law there is a significant body of case law affording greater protection for search cases, I write separately because the real issue in this case is not whether the search incident to a lawful arrest was justified, but rather, whether the search by the arresting officer was justified under the circumstances when Defendant gave him the car keys and he searched Defendant's car before delivering the keys to Defendant's grandmother.

## SEARCH BY DECEPTION

{35} As the Majority points out, Officer Tubbs arrested Defendant and put him in the rear seat of his patrol car, after which Defendant asked Officer Tubbs to give his car keys to his grandmother, who lived in the apartment complex. Officer Tubbs took the car keys, but instead of taking the keys directly to Defendant's grandmother, he first conducted an inventory search of Defendant's car where he found a loaded .40–caliber handgun underneath the driver's seat.

{36} Under *Garcia,* New Mexico's state constitution "provides greater protection, requiring a warrant or the presence of exigent circumstances to remove evidence" to conduct a search incident to an arrest. 2005–NMSC–017, ¶ 29, 138 N.M. 1, 116 P.3d 72. As the Majority notes, Officer Tubbs testified that, at the time he searched the car, he did not feel he was in any danger, nor did he expect to find any evidence in the car related to the arrest. However, Officer Tubbs' search stems basically from Defendant's consent, not exigent circumstances. By voluntarily giving up his car keys to Officer Tubbs, any legitimate expectation of privacy to his car that Defendant may have had, ceased at that point.

{37} Arguably, Defendant was under the impression that Officer Tubbs was going to deliver the car keys to his grandmother and, when Officer Tubbs searched his car, he may have exceeded the scope of Defendant's consent. In other words, Officer Tubbs may have misrepresented his true intentions when he agreed to deliver Defendant's car keys to his grandmother. It is reasonable to conclude that the reason Defendant did not want the police to get custody of his car by impounding it is that he did not want them to find his gun in the car.

{38} Nonetheless, this Court has recognized that entry by deception does not violate the Fourth Amendment. *See, e.g., State v. Allen,* 114 N.M. 146, 835 P.2d 862 (Ct.App. 1992). In *Allen,* this Court held that an undercover officer's entry by deception into the home of the defendant convicted as an accessory in cocaine trafficking did not result

in breach of privacy and, thus, did not violate the defendant's rights under the state constitution or the Fourth Amendment. *Id.* at 147, 835 P.2d at 863. *Allen* reasoned that, since there was no forcible entry by the officer into Defendant's residence, by taking the officer into the house, "there was no breach of defendant's legitimate interest in privacy." *Id.*

{39} Here, like in *Allen*, Officer Tubbs gained access to Defendant's car through what might have amounted to deception, but certainly was not coercion or force. Furthermore, one's reasonable expectation of a privacy interest does not extend to an arrestee like Defendant, who voluntarily gives up his car keys to an arresting uniformed officer contemporaneously with his arrest. "[P]olice deception which [is] not coercive in nature will not invalidate a consent to search if the record otherwise shows the consent to have been voluntary." Matthew Bender, 1—8 *Search and Seizure* § 8.17 at 258 n. 262 (2004). Here, the officer did not demand that Defendant give him the car keys. Defendant did this voluntarily with the request that the officer deliver the keys to his grandmother. Since entry by deception into one's home does not violate the Fourth Amendment, it would not violate it by entry into a car where there is a lesser expectation of privacy. *See State v. Ryon*, 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032 (stating that the constitutional distinction between vehicles and homes for purposes of search and seizure analysis turns on the privacy expectation; a lesser expectation of privacy attaches to a vehicle).

## GOVERNMENT'S JUSTIFICATION OF AN INVENTORY SEARCH

{40} Furthermore, it has been held that officers may take reasonable steps to safeguard property in a vehicle which has not been seized. 3 Wayne R. LaFave, *Search and Seizure* § 7.4(b) at 658 n. 117 (4th ed.2004); *see, e.g., United States v. Prazak*, 500 F.2d 1216 (9th Cir.1974). In *Prazak*, the defendant was arrested for DWI. He requested that his car be parked and secured by an arresting officer. To secure the car, one officer, without arrestee's request or consent, removed a sport coat from the rear seat, locked the car doors, and opened the

locked trunk to place the coat inside. When he opened the trunk, the officer discovered a zip gun. That court held that this type of search was not unreasonable. *Id.* at 1217.

{41} Although the State raises this issue for the first time on appeal, I am compelled to address it because this case involves Defendant's fundamental right of privacy and the reasonableness of Officer Tubbs' search under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Pacheco*, 85 N.M. 778, 517 P.2d 1304 (Ct. App.1973); *see also* Rule 12–216(B)(1)–(2) NMRA 2005 (providing that questions involving jurisdiction, general public interest, fundamental error, or fundamental rights of a party are exceptions to the preservation requirement).

{42} When Defendant gave Officer Tubbs his car keys, he received constructive possession of Defendant's car and, therefore, it was under the control and custody of the officer, who is an agent of the city's police department. The government interests that make an inventory search reasonable to safeguard the property from loss or theft, and to protect the police or city from liability and false claims, justified the officer to conduct an inventory search of Defendant's vehicle. *See State v. Williams*, 97 N.M. 634, 637, 642 P.2d 1093, 1096 (1982) (holding that a warrantless inventory search of the defendant's car, following his arrest for armed robbery, and after discovery that the defendant's automobile was parked legally behind the grocery store, was reasonable). Furthermore, federal courts have adopted a similar rationale regarding inventory searches of vehicles seized after an arrest. *See United States v. Scott*, 665 F.2d 874 (9th Cir. 1981) (holding that the police procedures, in conducting an inventory of arrestee's legally parked car in order to protect the arrestee's belongings, was an appropriate caretaking function); *United States v. Staller*, 616 F.2d 1284 (5th Cir.1980) (upholding that a search, subsequent to police taking custody of the defendant's legally parked automobile, was a legitimate exercise of a caretaking function because of the risk to the car parked overnight in a mall parking lot).

{43} The Majority points out in *Hall v. State*, 399 So.2d 348, 353 (Ala.Crim.App.1981) that "a mere showing that an accused gave officers the keys to her car upon their request was insufficient to show a voluntary waiver of her Fourth Amendment rights." I agree with this statement under the facts presented in *Hall*. However, in *Hall*, appellant had refused several requests to allow the officers to search the trunk of his car but, afterwards, involuntarily submitted to a search based on the officers' threats. That court held that "[i]t is apparent that the appellant was *submitting* rather than *consenting* to the search." *Id.* at 354 (emphasis in original). That court added "in examining all the surrounding circumstances to determine if, in fact, the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.* (internal quotation marks omitted). Thus, *Hall* is completely distinguishable from our case because, in *Hall*, the officer used coercive and threatening techniques to acquire appellant's consent or submission. In our case, Defendant voluntarily handed over his keys without any coercive actions from Officer Tubbs. Officer Tubbs never asked for the keys and never threatened Defendant, unlike *Hall*, where that defendant specifically refused a requested search. Here, Defendant's consensual relinquishment of control over his vehicle by voluntarily giving his keys to Officer Tubbs is what makes the ensuing search reasonable.

{44} The events of this case flow from one stage to another. Once Officer Tubbs received Defendant's consent to possession and control of the car by the keys being turned over to him, he had an obligation to secure the car. In order to secure the vehicle, he had to check out its contents to avoid any liability from any claims that something valuable might be taken from the car. Therefore, under *Prazak*, Officer Tubbs' actions were justified and constituted "a reasonable means of rendering the car and its contents secure." 500 F.2d at 1217.

{45} Whether the Majority's opinion labels this an inventory search, or a search incident to arrest, which I do not believe it was, does not really matter. At this point, the search was not constitutionally unreasonable and evidence of the gun seized should not be suppressed.

{46} I would affirm. I, therefore, respectfully dissent.