2007-NMCA-075

161 P.3d 280

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Richard ROWELL, Defendant–Appellee.**

**No. 26,429.**

Court of Appeals of New Mexico.

April 12, 2007.

Certiorari Granted, No. 30,380, June 4, 2007.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellant.

Downing & Henderson, P.C., David Henderson, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Chief Judge.

{1} The State of New Mexico appeals the suppression of evidence in the prosecution of Defendant Richard Rowell, who was stopped for speeding in a school zone. The suppressed evidence consisted of marijuana in plain view seized from Defendant's pocket while he sat in his vehicle, drug paraphernalia found in Defendant's pocket after Defendant was out of the vehicle, and weapons later seized from Defendant's vehicle. The district court held that the seizure of the marijuana was unlawful and that the seizures of the paraphernalia and weapons were also unlawful as fruits of an unlawful seizure and arrest related to the possession of marijuana. The State contends that the seizure of the marijuana was lawful and that the seizures of the paraphernalia and weapons were justified under various theories. We agree with the State that the seizure of the marijuana was lawful, and that the marijuana and drug par-

aphernalia should not have been suppressed. We therefore reverse the suppression of the marijuana and drug paraphernalia. We disagree that the seizure of the weapons was lawful. We therefore affirm the suppression of the weapons.

## BACKGROUND

{2} Defendant's motion to suppress was heard on stipulated facts. The facts were contained in a narrative prepared by Officer E. Thomas of the Taos Police Department, in Taos, New Mexico.

{3} Officer Thomas was "running stationary radar during the lunch hour school zone while students [were] entering and exiting campus." He caught Defendant speeding and "conducted a traffic stop ... in the visitor's parking lot of the high school." The officer requested Defendant's driver's license, insurance, and registration. When Defendant leaned across to the glove box, the officer "could see a plastic baggy protruding from his front left pocket," and "[i]t appeared the baggy contained a green leafy substance believed to be marijuana in plain view." The officer reached in, took the baggy from Defendant's pocket, and confirmed that it was marijuana. He then asked Defendant to exit the vehicle, at which time the officer handcuffed him and, while checking his pockets, asked Defendant "if he had anything else I should be aware of such as guns, knifes [sic], bombs or bazookas." To that question Defendant answered "No." The officer found a glass-like marijuana pipe and a lighter in Defendant's pockets. The officer placed Defendant under arrest for possession of marijuana and drug paraphernalia. As the officer took Defendant to his patrol car, Defendant "spontaneously stated there was a shotgun in the back seat of the vehicle."

{4} The officer placed Defendant in the unit for safety purposes and made the decision to impound Defendant's vehicle. At some point after the officer had advised Defendant of his rights, Defendant volunteered that he was coming onto school grounds to drop off lunch to his mother, and admitted to possession of a firearm on school grounds. The officer requested a second police unit to assist with the transport of Defendant.

{5} "While conducting an inventory pending impound of the vehicle," the officer took photographs of a number of items in the vehicle, namely, a shotgun, a loaded revolver, a two-foot long wooden bat/club, a wooden handle straight blade knife, nineteen rounds of shotgun shells, two box cutter type blades, a package of zig-zag rolling papers, a baseball cap with a particular symbol on it, as well as a bandana, both of which were known to the officer to be worn by gang members, and a Leatherman-type knife/multi-tool. At a later time, the officer noticed "NSL" written in the dust of the vehicle and knew those initials to be that of the "north side" gang.

{6} The officer moved Defendant from his unit to the unit that arrived to assist and requested a tow truck to remove Defendant's vehicle. Upon being advised that the tow truck was unavailable, the officer decided to locate Defendant's mother. When Defendant's mother was located, she informed the officer that the vehicle was her son's vehicle. The officer told her that Defendant was under arrest and that the officer was not able to impound the vehicle due to the unavailability of a tow truck, and asked her "if she could take custody/control of the vehicle." Defendant's mother said that she would take responsibility for the vehicle. The officer then seized the evidence he had found during his inventory of the vehicle.

{7} Defendant was ultimately charged with four counts of possession of a deadly weapon on school premises, contrary to NMSA 1978, § 30-7-2.1 (1994), but he was not charged with any counts based on possession of marijuana or paraphernalia. Defendant moved to suppress the evidence, and stated in his motion that he was charged with possession of marijuana and possession of drug paraphernalia. Defendant sought suppression of "all the evidence stemming directly or indirectly from the unlawful entry into his car, the seizure of a baggy from his pocket and /or from the unlawful search of his car." The State argued that the seizures of the marijuana and the weapons were justified on various grounds, but conceded that the pretowing inventory search was not justified.

{8} The district court suppressed the marijuana, relying on *State v. Garcia*, 2005–

NMSC–017, ¶ 29, 138 N.M. 1, 116 P.3d 72, in which our Supreme Court held that under New Mexico's Constitution, "even with an object in plain view, an officer may not enter the car and seize the object, without either consent, a warrant, or exigent circumstances." The court suppressed the paraphernalia and weapons as fruits of the illegal seizure of the marijuana. The State appeals from the order suppressing the evidence, asserting (1) that the New Mexico Constitution does not require a warrant in order to seize contraband in plain view from an occupied vehicle, and that case law cited as holding to the contrary does not apply to contraband in plain view on a defendant's person inside a vehicle; (2) that the contraband was properly seized pursuant to a search incident to arrest; (3) that the inevitable discovery and independent source doctrines apply in this case with respect to the marijuana and the weapons; and (4) that the weapons were properly seized as part of a search incident to arrest and based on exigent circumstances.

## DISCUSSION

### I. Standard of Review

■ {9} The facts are not in dispute. This Court's review of the district court's suppression of the evidence is de novo. *State v. Gutierrez*, 2004–NMCA–081, ¶ 4, 136 N.M. 18, 94 P.3d 18.

### II. Seizure of the Marijuana Was Lawful

■ {10} The officer seized marijuana on Defendant's person while Defendant was behind the wheel of the vehicle. The marijuana was in plain view and the officer knew that it was marijuana. It was objectively clear that Defendant could drive away with the marijuana. The circumstances in *State v. Weidner*, 2007–NMCA–063, 141 N.M. 582, 158 P.3d 1025, which we are filing concurrently with the present case, are indistinguishable. In *Weidner*, we hold that the seizure of drugs in plain view from a person who is behind the wheel and in control of the vehicle, and a contemporaneous arrest for possession of the drugs are lawful based on the exigent circumstances and search incident to arrest exceptions to the warrant require-

ment. *Id.* ¶¶ 1, 17, 24. Our holding in *Weidner* controls here.

{11} We hold that the seizure of the marijuana from Defendant in the present case was lawful. Despite the fact that the record in this case reflected no drug-related charges against Defendant, the parties and the district court appear to have been operating under the assumption that Defendant was charged with drug-related crimes when, in fact, he had not been so charged. The district court suppressed the drug-related evidence and the State appealed that ruling. We hold that the court erred in suppressing the marijuana and the paraphernalia.

{12} Because we hold the seizure of the marijuana to be lawful, we need not, and therefore do not address the application of the independent source doctrine related to the marijuana. *See State v. Wagoner*, 2001–NMCA–014, ¶ 21, 130 N.M. 274, 24 P.3d 306 ("The independent source doctrine is an exception to the exclusionary rule where evidence is legally seized after an illegal search."). As we discuss next, notwithstanding the lawfulness of the seizure of the marijuana, we hold that the later seizure of the weapons was not constitutionally permissible.

### III. Seizure of the Weapons Was Not Lawful

#### A. Preliminary Matters

{13} The State conceded in the district court that the proper procedures were not followed to justify the search as an inventory search and the State does not argue on appeal that the search was justified as an inventory search. Thus, we do not address whether the search was constitutional as an inventory search.

■ {14} On appeal, the State argues that the district court did not address the issue of suppression of the weapons separately from suppression of the marijuana even though the parties presented the questions separately. Thus, the State argues that if we reverse suppression of the marijuana we should remand for the district court to decide the issue of suppression of the weapons. We disagree. The parties made various arguments for and against allowing the weapons

into evidence. The court, in its memorandum letter stated: "If this was a seizure from a vehicle, then *Garcia* would dictate suppression of the baggy, the arrest, *and all that flows from that sequence of events.* ... I think *Garcia* controls, and the evidence must be suppressed." (Emphasis added.) We take this to mean that the district court concluded that the seizure of the marijuana and the arrest were illegal. Further, because the court believed the arrest was illegal, Defendant's statement once he was under arrest that he had a gun in the back of his car was the fruit of the unlawful arrest and must be suppressed, as well as the weapons seized. The district court sufficiently addressed the issue of suppression of the weapons and it is not necessary for us to remand for further factual development to address the legality of the search and seizure of the weapons. *See State v. Gonzales,* 1999–NMCA–027, ¶¶ 11–15, 126 N.M. 742, 975 P.2d 355 (indicating that the district court is not required to make findings of fact when ruling on motions to suppress evidence, and rather than remanding for factual development we "indulge in all reasonable presumptions in support of the district court's ruling"). We may affirm suppression of evidence if the district court was correct but for the wrong reason. *State v. Snyder,* 1998–NMCA–166, ¶ 8, 126 N.M. 168, 967 P.2d 843 (stating that we may affirm the district court on different grounds unless the parties "did not have a fair opportunity to present admissible evidence in the district court concerning the facts on which those grounds depend").

{15} The State also argues that the evidence regarding the weapons is admissible under the independent source doctrine and the search incident to arrest doctrine. We determine that an analysis of the application of the independent source doctrine to the seizure of the weapons is unnecessary because we have held that the seizure of the marijuana was lawful in this case. *See Wagoner,* 2001–NMCA–014, ¶ 21 ("The independent source doctrine is an exception to the exclusionary rule where evidence is legally seized after an illegal search."). We now turn to the only remaining issue, whether the State met its burden of justifying the warrantless seizure of the weapons and we hold the State did not meet that burden.

**B. The State Failed to Justify the Warrantless Search and Seizure Related to the Weapons**

{16} The State argues that "the officer's search of Defendant's car for weapons, based on actual knowledge of a weapon inside the vehicle, was proper both as a search incident to arrest and because the close proximity of the students presented exigent circumstances." The State asserts that the officer acted to protect himself and for the safety of students. We reject the State's argument, holding that the State's proof was insufficient to establish the exigent circumstances and search incident to arrest exceptions to the warrant requirement. *See State v. Martinez,* 1997–NMCA–048, ¶¶ 9, 12, 123 N.M. 405, 940 P.2d 1200 (holding the evidence at the suppression hearing was inadequate to justify a search of a paper sack in a residence for weapons as incident to the defendant's arrest).

{17} Warrantless seizures are presumed unreasonable and the State bears the burden of proving reasonableness. *State v. Jones,* 2002–NMCA–019, ¶¶ 11, 16, 131 N.M. 586, 40 P.3d 1030. In order to prove that a warrantless search or seizure is reasonable, the State must prove that the search or seizure fits into an exception to the warrant requirement. *See id.* Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view. *State v. Duffy,* 1998–NMSC–014, ¶ 61, 126 N.M. 132, 967 P.2d 807.

**1. The Test for Exigent Circumstances**

{18} To prove that a search is justified under the exigent circumstances exception to the warrant requirement, there must exist "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Gomez,* 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (internal quotation marks and citation

omitted). "[A] warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances." *Id.* "We believe that a limited vehicle search for weapons when an officer reasonably believes he may be in danger comports with Article II, Section 10 of the New Mexico Constitution provided that it is based upon a particularized showing of exigent circumstances, rather than purely on the *theoretical* basis that harm could occur." *State v. Arredondo,* 1997–NMCA–081, ¶ 17, 123 N.M. 628, 944 P.2d 276 (internal quotation marks and citations omitted), *overruled on other grounds by State v. Steinzig,* 1999–NMCA–107, 127 N.M. 752, 987 P.2d 409. In order to justify the entry into a vehicle to seize a weapon from a vehicle when a suspect is already under arrest, there "must be a reasonable suspicion the suspect is both armed *and* dangerous." *Garcia,* 2005–NMSC–017, ¶ 31. Under New Mexico law, we do not assume that an individual is dangerous or "inclined to harm an officer in the course of a routine traffic stop" simply because a loaded weapon is present in the vehicle. *Id.* (internal quotation marks and citation omitted).

### 2. The Test for Search Incident to Arrest

{19} To prove that a search is justified under the search incident to arrest exception to the warrant requirement, the State must prove "that the search occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control." *Arredondo,* 1997–NMCA–081, ¶ 27; *accord Gutierrez,* 2004–NMCA–081, ¶ 11. This exception derives from *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *See State v. Pittman,* 2006–NMCA–006, ¶ 7, 139 N.M. 29, 127 P.3d 1116; *Gutierrez,* 2004–NMCA–081, ¶ 11; *Martinez,* 1997–NMCA–048, ¶¶ 6–7. The search incident to arrest doctrine as established in *Chimel* was that, following a lawful arrest, an officer can search the suspect's person and the area within his immediate control for weapons or evidentiary items. 395 U.S. at 762–63, 89 S.Ct. 2034. The area within the suspect's immediate control was described as the area from "within which he might gain possession of a weapon or de-structible evidence." *Id.* at 763, 89 S.Ct. 2034. Under Article II, Section 10 of the New Mexico Constitution, once it is shown that the search or seizure occurs as a contemporaneous incident to a lawful arrest, all that must be proved is that the search is of the suspect's person or the area from within which the suspect might gain possession of a weapon or concealable or destructible evidence. *Arredondo,* 1997–NMCA–081, ¶ 27; *accord Gutierrez,* 2004–NMCA–081, ¶¶ 11–12.

{20} The justifications for the search incident to arrest doctrine are officer safety and prevention of concealment or destruction of evidence. *See Pittman,* 2006–NMCA–006, ¶¶ 7, 10; *Arredondo,* 1997–NMCA–081, ¶ 27. It is not the justifications which must be proved. Rather, the State must prove the ability of the suspect to gain possession of a weapon to use against the officer, or to gain possession of evidence and conceal or destroy it.

### 3. Instructive New Mexico Cases

{21} Pertinent New Mexico cases present related issues as to the lawfulness of a general search of a vehicle, as well as seizure of a known weapon in a vehicle before and after the detention of an occupant who has been removed from the vehicle, and are useful in our analysis. In *Garcia,* officers pulled over a vehicle because of a suspicious dealer demonstration tag. 2005–NMSC–017, ¶ 2. Even before the vehicle came to a complete stop, the defendant, who was the passenger, stepped out of the vehicle and slouched against the vehicle with part of his body hidden from view, stared at the officers with an aggressive look described as a " 'thousand yard stare,' " and did not immediately follow the officer's directions to return to the vehicle. *Id.* This behavior caused one of the officers to draw his weapon. *Id.* As the officers approached the vehicle to give the driver his traffic citations, one officer saw a gun in plain view "protruding from underneath the rear of the passenger seat." *Id.* ¶ 4. As the defendant got out of the vehicle as he was ordered to do by the officers, the same officer saw a loaded ammunition clip on

the passenger seat. *Id.* The officers detained the defendant and the driver "[o]ut of concern for officer safety," searched the vehicle, and removed the gun. *Id.* The officer did not testify that he believed that the defendant was dangerous. *See id.* ¶¶ 2, 33. However, our Supreme Court held that the facts known to the officer, viewed objectively, established evidence that the defendant was armed and dangerous, and although the officer did not articulate that he believed there were exigent circumstances, the Supreme Court upheld the district court's determination of exigent circumstances. *Id.* ¶¶ 6, 31–33.

{22} In *Arredondo,* the defendant was suspected of committing an "inherently dangerous crime," assault with a handgun. 1997–NMCA–081, ¶¶ 2, 16 (internal quotation marks and citation omitted). This Court held that the officer had a reasonable belief the defendant was armed and dangerous based on his suspected involvement in the reported crime, and thus exigent circumstances justified a search of the defendant's vehicle for weapons as a lawful extension of the scope of a protective search during the investigatory stop. *Id.* ¶¶ 15–16, 18.

{23} In *Gutierrez,* an officer stopped a vehicle because the defendant was not wearing a seatbelt. 2004–NMCA–081, ¶ 2. While issuing a citation, the officer discovered that the defendant had an outstanding warrant, and handcuffed and arrested the defendant. *Id.* The defendant then told the officer that there was a gun in the car. *Id.* ¶ 3. The officer had planned to turn the car over to the defendant's passenger, who was outside the vehicle and closer to it than either officer at the scene. *Id.* ¶ 8. The officer testified that he was concerned about the safety of the public, he knew nothing about the passenger, and "he did not believe he could simply hand the weapon over to the passenger." *Id.* The officer seized the gun from the vehicle. *Id.* ¶ 3. A computer check revealed that the weapon was stolen. *Id.* Analyzing the issue under the search incident to arrest exception to the warrant requirement, we held that the seizure of the gun was reasonable because the officer had testified about his safety concerns given that the passenger was in close proximity to the gun. *Id.* ¶¶ 7, 11. Our ultimate holding was that "based on an officer's reasonable safety concern, a warrantless seizure of a weapon within the area of immediate control of a person who is present during a custodial arrest does not violate the rights of the arrestee under the New Mexico Constitution." *Id.* ¶ 12.

{24} Finally, in *Pittman,* a police officer saw the defendant commit a traffic infraction. 2006–NMCA–006, ¶ 2. The defendant pulled into the parking lot of an apartment building and before the officer could approach the defendant, the defendant got out of his car and locked it. *Id.* ¶ 2. While checking the defendant's license and registration, the officer discovered that the defendant had an outstanding warrant, and then arrested, handcuffed, and placed him in the rear seat of the patrol car. *Id.* ¶ 3. The defendant gave the officer his keys and asked him to give the keys to his grandmother, who lived in one of the apartments. *Id.* ¶ 4. The officer, who testified that he did not feel that he was in any danger and had no reason to suspect any evidence was in the vehicle related to the arrest, searched the vehicle and found a weapon. *Id.* Nothing in the record in *Pittman* indicated that the officer had any intention of searching the vehicle until the defendant gave the officer the keys. *Id.* ¶ 17. Because the defendant was a felon, he was charged with being a felon in possession of a firearm. *Id.* ¶ 5. The district court denied the defendant's motion to suppress the weapon. *Id.*

{25} The State argued in *Pittman* that the search by the officer was proper under the search incident to arrest doctrine. *Id.* ¶ 7. This Court noted that "[a]t the time of the search, the situation had been neutralized by handcuffing [the d]efendant and placing him in the patrol car." *Id.* ¶ 23. It was clear from the circumstances that the defendant had no realistic opportunity to escape and obtain the weapon in his vehicle. *Id.* We also noted that the officer had no intention of searching the vehicle until he was presented with the defendant's keys and that the officer did not believe the defendant presented any danger. *Id.* ¶¶ 17, 22. Further, the officer could not reasonably have believed that there

was evidence in the vehicle related to the basis on which the defendant was arrested. *Id.* ¶ 24. The officer testified that he did not feel that he was in any danger and did not know of any evidence in the vehicle related to the arrest that would be destroyed absent a seizure of the evidence; rather, the officer was "engaged in exploratory rummaging." *Id.* ¶ 25. *Pittman* held that, under the circumstances, the officer's search could not be characterized as reasonable under Article II, Section 10 of the New Mexico Constitution. *Id.*

{26} Unquestionably, the present case has aspects that bring the foregoing cases into play. Lawfulness is first guided by the general principles that warrants are favored and a warrant is required to enter the vehicle unless a recognized exception to the warrant requirement can be proven. Those principles are firmly established by *Garcia, Gomez, Arredondo,* and *Jones.* See *Weidner,* 2007–NMCA 063, ¶ 6. In *Garcia* and *Arredondo,* the question was whether exigent circumstances existed allowing an officer to search a vehicle for weapons out of a concern for officer safety. *Gutierrez* analyzed under the search incident to arrest doctrine that it was clear that the person arrested could not reach the known weapon. However, this Court addressed whether safety concerns required officer action in order to assure that another vehicle occupant, a passenger who was outside of, but close to, the vehicle and who might be given the vehicle to drive off, could not have immediate access to the weapon to use against the officer. See *Gutierrez,* 2004–NMCA–081, ¶ 11 (noting the observation made in *Martinez,* 1997–NMCA–048, ¶ 7, a residence search case considering the search incident to arrest exception, that "the presence at the scene of persons other than the arrestee may justify searching for weapons in their immediate vicinity" (internal quotation marks and citation omitted)). *Pittman* also analyzed under the search incident to arrest doctrine that it was clear the arrested defendant could not reach the vehicle. 2006–NMCA–006, ¶ 23.

{27} These cases lay the following foundations. First, where the State argues that a search for weapons or the seizure of a known weapon in a vehicle is justified based on exigent circumstances, the circumstances must be closely tailored to the requirements set out in *Garcia, Gomez,* and *Arredondo* as those cases analyze and are based on the exigent circumstances exception. There must be "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Gomez,* 1997–NMSC–006, ¶ 39 (internal quotation marks and citation omitted). The proof must consist of a particularized showing of the exigent circumstances. *Id.* The showing cannot be theoretical. *Arredondo,* 1997–NMCA–081, ¶ 17. It must be shown that an occupant is armed and dangerous or inclined to harm an officer. *Garcia,* 2005–NMSC–017, ¶ 31. Second, where the State argues that a search for weapons or the seizure of a known weapon in a vehicle is a contemporaneous incident to a lawful arrest of an occupant of that vehicle, the State must prove, through an articulated, particularized factual showing, that the search or seizure occurred contemporaneously to a lawful arrest and was confined to an area within the immediate control of the arrested occupant or other occupants of the vehicle. *Arredondo,* 1997–NMCA–081, ¶ 27; *accord Gutierrez,* 2004–NMCA–081, ¶ 11.

### 4. The State's Failure of Proof

{28} The State failed to present sufficient evidence to support application of either the exigent circumstances exception or the search incident to arrest exception in the present case. No one but Defendant was in the vehicle. After arresting Defendant, the officer asked him whether there were any weapons of which the officer should be made aware. Defendant initially stated "No," but shortly thereafter stated that there was a shotgun in the back seat of his vehicle. The officer placed Defendant in his patrol vehicle for "safety purposes" and then "conduct[ed] an inventory pending impound of the vehicle," pursuant to which the officer found several weapons. Apparently, the officer's only reason for entering the vehicle was that he

had determined to have the vehicle impounded and he wanted to perform an inventory search before it was towed. The officer did not say that he believed there was any threat to his safety, nor did he state any concern that objects in the vehicle would be concealed or destroyed.

{29} Further, the weapons were not within Defendant's immediate control at the time they were seized. None of the facts actually relied upon by the officer constitute facts that amount to any exigent circumstance justifying application of the exigent circumstances exception to the warrant requirement. Nor is there evidence of facts known to the officer at the time that he searched the vehicle which, viewed objectively, provided a valid constitutional ground for the officer's actions. *See Garcia,* 2005–NMSC–017, ¶ 33. In particular, there was no evidence of exigent circumstances with respect to school children. Nor was there any evidence showing that alternative actions were unreasonable or unavailable.

{30} The State nevertheless attempts to define the exceptions to include circumstances in which some unknown person, might, theoretically, have access to an unguarded vehicle. The State offers two arguments, each of which we reject.

{31} The State argues that the seizure must be considered lawful because the Legislature recognized the inherent danger of weapons on school grounds in enacting Section 30–7–2.1, prohibiting carrying a deadly weapon on school grounds. Section 30–7–2.1(A)(5) states that:

> [u]nlawful carrying of a deadly weapon on school premises consists of carrying a deadly weapon on school premises except by . . . a person older than nineteen years of age on school premises in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property.

Section 30–7–2.1 also includes other exceptions for officers, school security personnel, and students and instructors involved in military training corps programs or other school-authorized activities. § 30–7–2.1(A)(1)–(4). Plainly, the Legislature's concern regarding weapons on school grounds does not reach the level attributed to it by the State, which is that it is a per se exigent circumstance to have a weapon in a vehicle on school grounds during school hours. The Legislature's determinations that weapons in a vehicle on school grounds or being used by students as part of school-sponsored activities are permissible under certain circumstances bolsters our conclusion that a weapon in a vehicle situated anywhere on school grounds does not alone create an exigent circumstance or constitute a per se exigent circumstance, but that a more particularized showing of exigent circumstances is required. Further, while it might have been proved at trial that Defendant violated the statute, the issue before us today is exigency, not whether Defendant violated the statute.

{32} The State also argues that the officer knew the vehicle was on school grounds and knew there was a weapon in the vehicle, and it would therefore be reasonable to believe that a student may get into the vehicle, access one of the weapons, and become a danger. While we cannot say that it is beyond the realm of possibility that a student could get into the vehicle and retrieve a weapon, as stated in *Arredondo* our determination of reasonableness in employing exceptions to the warrant requirement depends on the *known facts,* not on a "*theoretical* basis that harm could occur." 1997–NMCA–081, ¶ 17. The State offered no testimony and there exists no evidence as to whether any student was actually anywhere in the vicinity of the vehicle or was likely to be around the vehicle while it was unguarded. There exists no evidence that the vehicle was even in a location likely to be accessed by school children while the vehicle was in the visitor's parking area. Moreover, the State presented no evidence showing why it was unreasonable to obtain a warrant or why there existed no reasonable alternative course of action for the officer other than to search and seize the weapons as he did. *See State v. Valdez,* 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct.App. 1990).

{33} The State argues that according to the officer's narrative the officer was running his radar during the lunch hour

school zone when students were exiting and entering the school, and that a fair inference from that is that students were in the area of the vehicle. However, we believe that making that inference would require us to rely on a theoretical justification rather than a known fact. We decline to do so. Furthermore, we decline to create a broad, bright-line rule that the mere existence of a weapon in a vehicle belonging to someone at least nineteen years old anywhere on school grounds during school hours automatically creates an inherent exigency justifying a warrantless search of a vehicle under the exigent circumstances exception or a presumption of immediate control under the search incident to arrest exception. *See* § 30–7–2.1(A)(5); *Arredondo*, 1997–NMCA–081, ¶ 28 (eschewing bright-line rules and requiring a fact-specific inquiry into the reasonableness of a search under Article II, Section 10).

{34} We hold that the State failed to justify the warrantless search and seizure related to the weapons, and that suppression of the weapons, therefore, is affirmed.

**CONCLUSION**

{35} We reverse the district court's suppression of the marijuana and drug paraphernalia. We affirm the district court's suppression of the weapons.

{36} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.